**No. 25-2638**

---

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

RUSTON PANABAKER, SHERI PANABAKER,
JENNIFER L. HUTSON, DAVID T. JOHNSON, SUSANNA JOHNSON,
ROBERTA THOMPSON, MATTHEW BERENSON, MARK D. TAYLOR,
and PAULA BLANCHET,

Plaintiffs-Appellants,

v.

CITY OF HOOD RIVER,

Defendant-Appellee.

---

On Appeal from the United States District Court for the District of Oregon
No. 3:24-cv-00901-AN ♦ Honorable Adrienne Nelson

---

## OPENING BRIEF OF APPELLANTS

---

Paul Conable
Danny Newman
Paul Balmer
TONKON TORP LLP
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
(503) 802-2072
paul.conable@tonkon.com
danny.newman@tonkon.com
paul.balmer@tonkon.com

Heather A. Brann
HEATHER A. BRANN PC
PO Box 11588
Portland, OR 97211
(503) 490-6563
branns@earthlink.net

   Attorney for Plaintiffs-Appellants

Christopher Lundberg
Matthew E. Malmsheimer
Haglund Kelley LLP
2177 SW Broadway
Portland, OR 97201
(503) 225-0777
clundberg@hk-law.com
mmalmsheimer@hk-law.com

   Attorney for Defendant-Appellee

September 2025

Christopher G. Michel
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, DC 20005
(202) 538-8000

christophermichel@quinnemanuel.com


  Attorney for Plaintiffs-Appellants

Andrew H. Schapiro
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

andrewschapiro@quinnemanuel.com


Attorney for Plaintiffs-Appellants

September 2025

i

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................ 1

II. STATEMENT OF JURISDICTION ................................................ 3

III. STATEMENT OF THE ISSUES .................................................... 3

IV. STATEMENT OF THE CASE ........................................................ 4

    A. Hood River And The Plaintiffs ................................................4

    B. The 2016 Ordinances ...............................................................6

        1. Ordinance 2026 ............................................................ 7

        2. Ordinance 2028 ............................................................ 9

    C. This Suit And Ordinance 2083 ...............................................10

    D. Subsequent Procedural History ..............................................12

        1. The Summary Judgment Motions ............................. 12

        2. The District Court's Decision .................................... 14

V. SUMMARY OF ARGUMENT ...................................................... 16

VI. STANDARD OF REVIEW ............................................................ 18

VII. ARGUMENT ................................................................................. 19

    A. The Ordinances Violate the Commerce Clause because they facially discriminate against out-of-state interests without valid justification 20

        1. The Ordinances Discriminate Against Out-Of-State Owners.. 20

        2. The 2016 Ordinances Discriminate Against Out-Of-State Owners ................................................................ 22

        3. Ordinance 2083 Does Not Eliminate The Facial Discrimination Against Out-Of-State Owners ................................................. 23

ii

4. This Court's Decision In *Rosenblatt* Does Not Support Treating The Ordinances As Nondiscriminatory ................................... 29

5. The City Provides No Sufficient Justification For The Ordinances' Discrimination Against Out-Of-State Interests ... 32

B. The Ordinances violate the Commerce Clause even if the *Pike* balancing test applies .......................................................... 34

1. This Court Should Reverse And Direct Judgment For Plaintiffs Because The Ordinances Impose Substantial Burdens On Interstate Commerce That Clearly Exceed Any Local Benefits ...................................................................................... 34

a. The Ordinances Substantially Burden Interstate Commerce .................................................................. 35

b. The Ordinances' Substantial Burdens On Interstate Commerce Outweigh Any Local Benefits ..................... 38

2. In The Alternative, This Court Should Vacate And Remand Because The District Court Impermissibly Overlooked Genuine Issues Of Material Fact And Drew Inferences In Favor Of The City ........................................................................................ 41

C. The District Court's other procedural errors warrant vacatur and remand ........................................................................... 47

1. The City Improperly Raised New Factual Arguments At The Summary Judgment Hearing ..................................................... 48

2. The City's One-Sentence Memorandum In Support Of Its Cross-Motion For Summary Judgment Is Insufficient ............ 49

3. The District Court Ignored Plaintiffs' Argument That The Ordinances Violate Oregon Zoning Law ............................... 51

VIII. CONCLUSION ................................................................................. 53

IX. STATEMENT OF RELATED CASES ............................................ 53

iii

## TABLE OF AUTHORITIES

**Page**

**Cases**

*American Motorists Insurance Co. v. Fireman's Fund Insurance Co.*, No. 05-0103 CRB, 2007 WL 735767 (N.D. Cal. Mar. 7 2007) .............................................. 51

*ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1075 (9th Cir. 2015) ............................ 48

*Association to Preserve and Protect Local Livelihoods v. Sidman*, 147 F.4th 40 (1st Cir. 2025) ....................................................................................................... 43

*Bergford v. Clackamas County,* 515 P.2d 1345, 1347 (Or. App. 1973) ................. 52

*Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007) ....................................... 50

*C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 391 (1994) ... 21, 28, 46

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 578 (1997) ................................................................................... 2, 20, 26, 33

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ............................................. 50

*Colon Health Ctrs. of Am., LLC v. Hazel*, 733 F.3d 535, 546 (4th Cir. 2013) ....... 42

*Csutoras v. Paradise High School*, 12 F.4th 960, 965 (9th Cir. 2021) ................... 18

*Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354 & n.4 (1951) ............... 21, 28

*Dep't of Rev. of Ky. v. Davis*, 553 U.S. 328, 338 (2008) ................................. 32, 34

*Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1035-37 (9th Cir. 2005) ............................................................................................................. 45

*Edgar v. MITE Corp.*, 457 U.S. 624, 643-46 (1982) ................................. 36, 37, 40

*Flynt v. Bonta*, 131 F.4th 918, 925 (9th Cir. 2025) ..................................... 20, 35, 38

*Granholm v. Heald*, 544 U.S. 460, 476 (2005) .............................................. passim

*Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 326 (5th Cir. 2022) .. 22, 29, 33

*In re Larry's Apartment, LLC*, 249 F.3d 832, 839 (9th Cir. 2001) ........................ 30

*Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 670 (1981) ..................... 38, 47

*MacIntyre v. Carroll College*, 48 F.4th 950, 956 (9th Cir. 2022) ......................... 53

*Morgan v. Jackson County*, 414 P.3d 917, 920 (Or. App. 2018) .......................... 52

*Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1155-56 & n.17 (9th Cir. 2012) ..................................................................................... 39, 47

*Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) ................. passim

*Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716 (9th. Cir. 2017) ..... 27, 31

*New Energy Co. v. Limbach*, 486 U.S. 269, 273 (1988) ................................... 19, 33

*Nollan v. California Coastal Comm'n,* 483 U.S. 825, 837 (1987) ......................... 25

*Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452-53 (6th Cir. 2003) ............................................................................................................. 50

*Oregon Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994) 2, 23, 32, 33

iv

*Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1015 (9th Cir. 1994) ........ 35
*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) ............................................... passim
*Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ......................................... 48
*Raymond Motor Transp. Inc. v. Rice*, 434 U.S. 429, 445 (1978) .......................... 39
*Rice v. Morehouse*, 989 F.3d 1112, 1116 (9th Cir. 2021) ...................................... 41
*Rosenblatt v. City of Santa Monica*, 940 F.3d 439 (9th Cir. 2019) ................ passim
*Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015) ........ 19
*Sheetz v. Cnty of El Dorado,* 601 U.S. 267, 268 (2024) ....................................... 25
*South Dakota v. Wayfair*, 585 U.S. 162, 1734 (2018) ........................................... 19
*South Lake Tahoe Prop. Owners Grp. v. City of South Lake Tahoe*, 310 Cal. Rptr.
   3d 9, 33-36 (Ct. App. 2023) ........................................................................ 22, 29
*Southern Pacific Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761, 767 n.2 (1945).... 47
*Stanton v. Medellin*, 481 P.3d 1004, 1008-09 (Or. Ct. App. 2021) ........................ 31
*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019). 19,
   33
*Town of Southhold v. Town of East Hampton*, 477 F.3d 38, 51 (2d Cir. 2007) 42, 46
*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 261 F.3d 245,
   263-64 (2d Cir. 2001) ....................................................................................... 42
*Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, __ F.4th __,
   2025 WL 2313142, at *10 (2d Cir. Aug. 12, 2025) ............................................ 24
*Webster v. Fall,* 266 U.S. 507, 511 (1925) ............................................................ 30
*West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 193 (1994) ....................... 27, 42
*Yogman v. Parrott,* 937 P.2d 1019 (Or. 1997)....................................................... 52

**Statutes**
28 U.S.C. § 1291.......................................................................................................... 3
28 U.S.C. § 1331.......................................................................................................... 3
Or. Rev. Stat. § 174.040(2)-(3)................................................................................. 52
Or. Rev. Stat. § 90.100(51)....................................................................................... 44
Or. Rev. Stat. § 90.100(54)....................................................................................... 44
Or. Rev. Stat. § 90.110(6)......................................................................................... 44
Or. Rev. Stat. § 90.147(1)........................................................................ 11, 25, 31, 36
Or. Rev. Stat. § 90.245(1)(a), (2)..................................................................... 25, 31, 36

**Rules**
Federal Rule of Civil Procedure 56 ......................................................... 18, 49, 51

**Constitutional Provisions**
U.S. Const. art. I, § 8, cl. 3 ...................................................................................... 19

**Hood River Municipal Code**
Chapter 5.10................................................................................................................ 9

v

HRMC § 17.04.115 ............................................................................ 8
HRMC § 17.05.020 .......................................................................... 52
HRMC § 5.10.040-050 ..................................................................... 22

**Hood River Ordinances**
Ordinance 2026 ....................................................................... passim
Ordinance 2028 .............................................................. 9, 11, 12, 23
Ordinance 2083 ....................................................................... passim

1

## I.    INTRODUCTION

The Commerce Clause of the federal Constitution "prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (cleaned up). The local ordinances adopted by the City of Hood River, Oregon, challenged in this case fit squarely within that description. Under the City's laws, Hood River residents may rent out their homes to vacationing tourists—earning extra income and boosting the economy—simply by providing proof of residency. But out-of-state owners of identical Hood River property cannot rent out their homes to tourists—and earn similar income—unless they find a Hood River resident who is willing to live in the home for more than a year and share it with a series of short-term renters. That naked effort to monopolize the short-term rental market for Hood River residents is paradigmatic "discrimination against interstate commerce" that lies "at the very core" of the dormant Commerce Clause's prohibition. *Id.* at 369-70 (cleaned up). Because the City does not even try to justify its discrimination under the strict scrutiny that would be required to sustain such discriminatory action, the challenged ordinances are plainly invalid and should have been set aside.

Rather than follow that straightforward reasoning, the district court granted summary judgment to the City based on multiple substantive and procedural errors.

2

At the threshold, the court mistakenly ruled that the ordinances do not discriminate against out-of-state owners because the out-of-state owners can still rent out their property through the local-business-partner option. But that conclusion rests on a misunderstanding of discrimination for dormant Commerce Clause purposes. A law can discriminate against interstate commerce even if it does not "involve a total prohibition" on such commerce. *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, *Me.*, 520 U.S. 564, 578 (1997). Rather, "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994). Hood River's ordinances impose just such differential treatment by making it far more complex and burdensome for out-of-state property owners to rent Hood River homes that are otherwise identical to those owned by local residents. That is textbook discrimination, and this Court should reverse the district court's implausible conclusion to the contrary.

Even if the ordinances were not treated as discriminatory, they would still be invalid. Under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), a nondiscriminatory law violates the Commerce Clause if it imposes substantial burdens on interstate commerce that are "clearly excessive in relation to the putative local benefits." *Id.* at 142. The burdens on interstate commerce imposed by the ordinances are undeniably substantial; indeed, the burden of recruiting a local resident willing to

live in a home for at least a year while also sharing it with short-term renters is so heavy that the record contains no evidence that any out-of-state owner has been able to successfully offer vacation rentals under the City's scheme. On the other side of the balance, the City's purported benefits are illusory and pretextual, with its invocation of preserving "community character" a thinly veiled euphemism for excluding outsiders. Such "tendencies toward economic Balkanization" are exactly what the dormant Commerce Clause exists to prevent. *Oregon Waste*, 511 U.S. at 98 (citation omitted). Yet the district court allowed the ordinances to stand by disregarding Plaintiffs' evidence, overlooking deficiencies in the City's evidence, improperly resolving factual disputes, and allowing the City to cut procedural corners. Those myriad errors warrant reversal and entry of judgment for Plaintiffs— or at a minimum remand for further proceedings on their claims.

## II.  STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291, because Plaintiffs-Appellants (the "Owners") filed their notice of appeal on April 22, 2025, within 30 days of the district court's entry of the final judgment on March 31, 2025. 3-ER-342, 1-ER-2.

## III.  STATEMENT OF THE ISSUES

1.  Whether Hood River's short-term rental regulations discriminate against out-of-state property owners in violation of the Commerce Clause.

4

2.      Whether Hood River's short-term rental regulations impose substantial burdens on interstate commerce that are clearly excessive in relation to the putative local benefits and thus violate the Commerce Clause.

3.      Whether the district court's procedural errors in its summary judgment analysis independently warrant vacatur and remand.

## IV.    STATEMENT OF THE CASE

### A.    Hood River And The Plaintiffs

The City of Hood River ("Hood River" or the "City") is located at the northern edge of Oregon, abutting the Columbia River.  Hood River is a major tourist attraction, resulting from its natural beauty and recreational resources.  The City labels itself the "heart" of the Columbia River Gorge, which it describes as an "outdoor playground" with proximity to Portland.[1]

Hood River has a population of a little over 8,000,[2] which swells to over 20,000 during the summer.  *See* City of Hood River, *Fiscal Year 2018-19 Adopted Budget* (Apr. 18, 2018).[3]  The State of Washington lies to the north of the City on the other side of the Columbia River, with the Hood River Bridge serving as a

---

[1]      *City of Hood River*, https://tinyurl.com/3nrb9zx6 (last accessed September 16, 2025).

[2]      U.S. Census Bureau, *Population Research Center*, https://tinyurl.com/2c5t4nuv (last accessed September 16, 2025).

[3]      Available at https://tinyurl.com/2ded7rhe (last accessed September 16, 2025).

5

connection. On average, more than 10,000 users drive across the Bridge every day.[4] The City government's website features the Hood River Bridge prominently and touts the benefits of Hood River's proximity to Seattle.[5]

This case involves six dwellings in Hood River owned by the Plaintiff Owners, each of whom has a primary residence outside of Oregon. Each Owner purchased residential dwellings as vacation homes in the City to spend substantial time recreating in Hood River themselves, and also to rent them to families and visitors staying in the City on vacation when the homes would otherwise be vacant. 2-ER-153 at ¶ 2-3 (Panabaker Decl.); 2-ER-150 at ¶ 2-3 (Hutson Decl.); 2-ER-148 at ¶ 2-3 (Johnson Decl.); 2-ER-146 at ¶ 2-3 (Thompson Decl.); 2-ER-143 at ¶ 2-3 (Taylor Decl.); 2-ER-141 at ¶ 2-3 (Berenson Decl.). The Owners thus lawfully competed for short-term rental business with Hood River residents for decades and facilitated tourism and commerce by increasing the range of affordable lodging options. 2-ER-153 at ¶ 4 (Panabakers since 2012); 2-ER-150 at ¶ 4 (Hutsons since 2012), 2-ER-148 ¶ 4 (Johnsons since 2009); 2-ER-146 at ¶4 (Thompson since 2004); 2-ER-143 at ¶ 4 (Taylor and Blanchet since the late 1990s); 2-ER-141 at ¶ 4 (Berenson since 2009).

---

[4]  *See* Port of Hood River, *Hood River Bridge*, https://tinyurl.com/uz4cp4v6 (last accessed September 16, 2025).

[5]  *City of Hood River*, *supra* note 1.

6

## B.    The 2016 Ordinances

In 2015, Hood River commissioned a Housing Needs Assessment survey, which resulted in a report and recommendations to the City (the "HNA"). 2-ER-66– 2-ER-99. The recommendations included changes to the zoning code to allow more multifamily development, reduced lot sizes, and development of affordable housing through building on public land; public incentives like tax abatement; and deferred development charges. 2-ER-97 – 2-ER-99. The HNA also included several recommendations regarding forward-looking regulation of short-term rentals, including establishing a license fee, developing systems for inspection and addressing issues related to garbage collection and parking limitations, requiring a local contact, and monitoring the number of such rentals. 2-ER-98. Nothing in the HNA suggested that restricting short-term rentals to locals only would address the target policy goals of creating and maintaining housing supply. 2-ER-66 – 2-ER-99.

After the HNA report was issued, the Hood River City Council held several public hearings and work sessions regarding the contours of the proposed regulation on short-term rentals. 2-ER-175 – 2-ER-182 (Staff Report describing public hearings on Ordinance 2026) 2-ER-186 – 2-ER-201 (Changes to Ordinance 2028 with Staff commentary). Those hearings were replete with testimony from Hood River residents complaining about out-of-state owners of dwellings in Hood River and suggesting that restricting short-term rentals to ownership by Hood River

residents would preserve what was generically termed "community character." 2-ER-201 – 2-ER-213; 2-ER-215 – 2-ER-216; 2-ER-227. For example, one Hood River resident testified "[w]hen you lose your neighbors to non-residen[ts], you soon lose control of your cit[y's] future." 2-ER-213. Another testified that she "wants residential neighborhoods to remain for residents." 2-ER-227.

### 1. Ordinance 2026

On September 12, 2016, Hood River adopted Ordinance 2026, a land-use ordinance amending the City's municipal code to make several changes regarding the regulation of short-term rentals in Hood River's residential zones. 2-ER-158 – 2-ER-182. The ordinance took effect on October 12, 2016. 2-ER-158. The ordinance was purportedly implemented to ensure sufficient housing for workers as well as to reduce the "clustering of vacation rentals" and their "erosion of the livability of neighborhoods." 2-ER-157.

First, Ordinance 2026 amended the definition of "residential" in Hood River's zoning code to create categories of "transient" use (occupancies of fewer than 30 nights) and "nontransient" use (month-to-month occupancies and owner occupancies). 2-ER-159 – 2-ER-160. The ordinance redefined "residential" use to include only "nontransient" use. *Id.* Each relevant zone had "residential" added to incorporate the new limitation in every zone. 2-ER-160-2-ER-174, *passim.*

8

As relevant to this action, Ordinance 2026 then added provision 17.04.155, "Hosted Homeshares and Vacation Home Rentals." 2-ER-171 – 2-ER-173. That provision enacted new restrictions in residential zones to limit the use of "dwelling units" as hosted homeshares or vacation-home rentals. A hosted homeshare is the "transient rental of a portion of a dwelling while the homeowner is present," while a vacation-home rental is "the transient rental of an entire dwelling unit." 2-ER-159–2-ER-160. A person operating a homeshare or vacation-home rental must have a short-term rental operating license. 2-ER-171. Such a rental is permitted in residential zones only "when it is an accessory use to the existing and continued residential use of a dwelling as the primary residence of the property owner," all "subject to [Hood River Municipal Code] 17.04.115," and must be limited to 90 days per calendar year. 2-ER-172 *citing* HRMC § 17.04.115 at C.1.-2.

For nonconforming homeshares and vacation-home rentals that existed at the time of the passage of the ordinance, the City provided five years to come into compliance with parking requirements and seven years to come into compliance with all other requirements—including the residential use and 90-day limits. *Id.* at D.1. As a result, existing homeshares and vacation-home rentals in residential zones had until October 2023 to conform with all requirements.

### 2. Ordinance 2028

A month later, in November 2016, the City adopted Ordinance 2028, a licensing ordinance (collectively with Ordinance 2026, the "2016 Ordinances"). 2-ER-183 – 2-ER-201. Ordinance 2028 has the same stated justifications as Ordinance 2026, and took effect immediately. 2-ER-183– 2-ER-184.

Ordinance 2028 amended the Hood River Municipal Code ("HRMC") to add Chapter 5.10, which governs the short-term rental operating licenses mandated by Ordinance 2026, described above, and provides the terms of those annual licenses and the criteria for approval. As relevant to this action, Ordinance 2028 requires a license applicant to provide proof of residential use by demonstrating the property's "continued use as the primary residence of the property owner." 2-ER-190 (owner residency proof).

By the seven-year phase-out in 2023, in order to obtain a short-term rental license, a homeowner was required to be a local resident of Hood River and to submit at least two of three documents as proof that the "dwelling is the primary residence of the owner": a copy of their voter registration, Oregon Driver's License or Identification Card, or federal income tax return from the previous tax year listing the Hood River property as their primary address. *Id.* Accordingly, Ordinance 2028 facially prohibited non-residents from obtaining a short-term rental license, which was required to operate such a rental under Ordinance 2026.

10

In October 2023, the City began informing nonconforming property owners that their licenses would not be renewed after January 2024 unless they could prove they were Hood River residents. 2-ER-154 ¶6 (Panabaker); 2-ER-151 at ¶7 (Hutson); 2-ER-148 ¶6 (Johnson); 2-ER-146 ¶6 (Thompson); 2-ER-144 ¶6 (Taylor/Blanchet); 2-ER-141 ¶6 (Berenson). The Plaintiff Owners could not comply with the City's demands and were put out of business due to their out-of-state residency. 2-ER-153 ¶5 (Panabaker); 2-ER-150 at ¶ 5 (Hutson); 2-ER-148 ¶5 (Johnson); 2-ER-146 ¶5 (Thompson); 2-ER-143 ¶5 (Taylor/Blanchet); 2-ER-141 ¶5 (Berenson). At least one Plaintiff, Jennifer Hutson (and her now-deceased husband), faced financial hardship as a result. *See* 2-ER-150 at ¶ 6.

## C. This Suit And Ordinance 2083

Plaintiffs commenced this action in June 2024, alleging that Ordinances 2026 and 2028 violate the dormant Commerce Clause by discriminating against and impermissibly burdening out-of-state owners with respect to their six vacation-home rentals. 2-ER-294 – 2-ER-304. In July 2024, after Plaintiffs filed this suit and before its answering deadline, Hood River adopted Ordinance 2083. 2-ER-202—2-ER-204. Ordinance 2083 (with Ordinances 2026 and 2028, the "Ordinances") amended the licensing requirement proof of primary residential use in Ordinance 2028. 2-ER-205.

11

Ordinance 2083 sets forth that the term "property owner" in the phrase "primary residence of the property owner" in the HRMC shall be interpreted to include "owner on title to the Property or a *tenant under long-term lease* with the owner (12-month or longer)." *Id.* (emphasis added). In other words, an out-of-state property owner can have a local tenant apply for a short-term rental operating license for a Hood River property so long as the long-term tenant/applicant resides at the property and meets certain qualifications. Specifically, a license applicant must submit three documents (instead of any two, as required by Ordinance 2028) to prove the title owner's or long-term tenant's local residency: their voter registration, Oregon Driver's License or Identification Card, *and* a federal income tax return from the *previous* tax year listing the Hood River property as the primary address.[6]

Notably, Ordinance 2083 does not address its apparent inconsistency with Oregon's landlord-tenant statute, which specifies that a "tenant has the right under a rental agreement to occupy the dwelling unit *to the exclusion of others*." Or. Rev. Stat. § 90.147(1) (emphasis added). The statute also provides that leases requiring a tenant to forfeit a statutory right are unenforceable. Or. Rev. Stat. § 90.245(1)(a), (2). But under Ordinance 2083, to satisfy Hood River's residency requirement through a long-term tenant, an out-of-state landlord would need to negotiate with the

---

[6] When the applicant is a long-term tenant, the tenant must also include an executed residential lease for the Hood River property between the tenant and title owner that is valid for the entire term of the sought license. 2-ER-205.

12

tenant to allow *landlord's* guests, possibly abridging the tenant's statutory right to exclude others from the premises. Further, out-of-state owners must sacrifice their personal use of the property in order to offer short-term rentals through a long-term tenant.

The City stated that the ordinance was "necessary" to (1) preserve "public peace, health, and safety" in Hood River, (2) "alleviate hardship on out of state property owners who wish to short-term rent their Hood River dwellings," (3) "adhere to constitutional requirements," and (4) benefit from increasing long-term tenancies in dwellings that "heretofore have only been available for short-term rental." 2-ER-203.

### D. Subsequent Procedural History

The Owners amended their complaint to include a dormant Commerce Clause challenge to Ordinance 2083 along with Ordinances 2026 and 2028. 2-ER-289 at ¶ 42. In short, the Owners alleged that the Ordinances erect impermissible discriminatory barriers to competition in the Hood River rental market that advantage local residents and disadvantage out-of-state property owners. *Id.* ¶ 41.

#### 1. The Summary Judgment Motions

In August 2024, the Owners filed a motion for summary judgment accompanied by factual declarations by six Owners—one representing each dwelling—describing their living situation and history of renting. *See* 2-ER-236 –

ER-271 (Motion); 2-ER-141 – 2-ER-154 (Owner declarations). A month later, the City filed its opposition to the Owners' motion for summary judgment, *see* 2-ER-121 – 2-ER-140, as well as a cross-motion for summary judgment, *see* 2-ER-46 – 2-ER-47. The City claimed that regulating short-term rentals would make housing more affordable because every such rental was "by definition, unavailable for long-term tenancy." 2-ER-126. The City also argued that its ordinances were non-discriminatory because they "impose[d] the same residency requirements" on both Oregon and non-Oregon participants in the short-term rental market. 2-ER-135. The City's cross-motion consisted of a single page and merely incorporated by reference its opposition to the Plaintiffs' motion. *See* 2-ER-47. In their reply, the Owners argued that the Ordinances were not facially neutral and that, even if they were, the City could not prevail because there was "no evidence in the record that the residency requirement would have *any* impact on housing affordability in Hood River." 2-ER-36 – 2-ER-37.

The district court scheduled oral argument on both motions for March 21, 2025. At the hearing, the City submitted a new factual declaration by Dustin Nilsen, the Director of Planning and Zoning for Hood River (the "Nilsen Declaration"), which had been signed the previous day, March 20. *See* 2-ER-21 – 2-ER-26. The Nilsen Declaration was directly responsive to arguments in Plaintiffs' reply, which had been filed five months earlier and questioned the impact of the residency

14

requirement.  The Nilsen Declaration stated that 47 additional properties were being offered for rent on a long-term basis in Hood River since the Ordinances went into effect, and attached a list of those properties.  2-ER-22—2-ER-23.  The data or assertions in the Nilsen Declaration had not been shared with counsel prior to the hearing.

Relying on the Nilsen Declaration, the City claimed that new evidence showed the Ordinances *had* "improved the situation in Hood River" and that these 47 available rentals had had a "significant impact" on the local rental market. 3-ER-338 at 33:10-19.  The Owners objected to the submission of the Nilsen Declaration. 3-ER-339 at 34:12-22.  They argued that in the event the district court did not find the Ordinances facially discriminatory, it should grant the Owners discovery into the data supporting the Nilsen Declaration before proceeding to a *Pike* balancing test analysis, because it was "exactly the kind of material we would need discovery on." *Id*.

### 2.     The District Court's Decision

The district court denied the Owners' motion for summary judgment, granted the City's cross-motion, and entered judgment dismissing the Owners' case. *See* 1-ER-3 – 1-ER-15 (Opinion and Order); 1-ER-2 (Judgment).

The district court concluded that the Ordinances do not violate the dormant Commerce Clause because they neither discriminate against out-of-state property

owners nor impose excessive burdens on interstate commerce under the *Pike* balancing test. The court found no discrimination against interstate commerce for several reasons. *First*, interpreting this Court's precedent in *Rosenblatt v. City of Santa Monica*, 940 F.3d 439 (9th Cir. 2019), the district court held that residency requirements permitting someone other than the owner to satisfy them do not violate the dormant Commerce Clause. *See* 1-ER-9 – 1-ER-10. In doing so, the district court seemed to understand the Ordinances' residency requirements as being satisfied by just *one* of the three forms of proof of residence—not all three forms that Ordinance 2083 required. 1-ER-5. *Second*, the district court rejected what it termed the Owners' "constrained and unsupported reading of the Ordinances," 1-ER-12, finding that nothing prevents the Owners from requiring long-term tenants to vacate during specified periods or using portions of residences for long-term tenants while maintaining other areas for short-term rentals. *Third*, the district court noted that the Ordinances apply equally to all property owners—whether in-state or out-of-state—who do not use the property as their primary residence. *Id*.

After deciding that the Ordinances did not facially discriminate against interstate commerce or out-of-state owners, the district court proceeded to apply the *Pike* balancing test. The district court found that the Owners failed to demonstrate the Ordinances impose a substantial burden on interstate commerce. 1-ER-13—1-ER-15. The district court characterized plaintiffs' concerns about negotiating leases

with periodic vacancies or waiting for tenants to update identification documents as minimal additional requirements that do not constitute excessive burdens. 1-ER-14. The court hypothesized on grounds not raised in any brief that "it does not seem implausible" that a permanent resident tenant would want to rent one of the Owners' properties for 275 days or fewer per year, thereby permitting use as a vacation-home rental. 1-ER-15. The district court noted that these requirements would apply equally to all non-resident owners regardless of their state of residence. *Id.* Finally, the district court concluded that even if the Owners had demonstrated a substantial burden on interstate commerce, the burdens were not excessive in relation to the putative benefits, which were not "illusory." *Id.*

## V. SUMMARY OF ARGUMENT

The district court erred in concluding that the Ordinances do not discriminate against out-of-state property owners who seek to offer short-term rentals in Hood River. Hood River requires that property owners establish Hood River residency in order to obtain a license to offer short-term rentals. By definition, out-of-state owners cannot establish Hood River residency. Even assuming out-of-state owners could satisfy the residency requirement through the presence of a long-term tenant—a contention the parties dispute—the Ordinances still make it effectively impossible for out-of-state owners to compete with Hood River residents in the City's short-term rental market. In order to obtain a short-term rental license, an out-of-state

owner would need to: (1) negotiate a non-standard lease term of more than one year; (2) negotiate the tenant's periodic absences or willingness to host guests so the property can be used as a vacation-home rental; and (3) wait for the tenant to obtain three different proofs of Hood River residency. Hood River residents do not face these same obstacles. As a result, the Ordinances facially discriminate against out-of-state owners. Because Hood River cannot establish that there are no reasonable nondiscriminatory alternatives to achieve its purported goals, the Ordinances violate the dormant Commerce Clause.

Even if the Ordinances were not treated as facially discriminatory, they would nevertheless violate the Commerce Clause under *Pike* balancing. The district court erred in concluding that the putative local benefits of the Ordinances outweigh their substantial burdens on interstate commerce. Plaintiffs submitted declarations stating that the Ordinances' onerous burdens had excluded them as out-of-state owners from the short-term rental market in Hood River entirely. At a minimum, the Ordinances put all out-of-state owners at a substantial disadvantage by requiring them to negotiate non-standard lease terms, negotiate the tenant's periodic absence or willingness to allow guests, sacrifice their own personal use of the property, and possibly wait months for the tenant to obtain all required proofs of Hood River residency. On the other side of the ledger, the City offers only illusory and speculative local benefits. The Ordinances therefore violate the dormant Commerce

Clause because they impose substantial burdens on interstate commerce that are "clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. This Court should reverse and direct entry of summary judgment for Plaintiffs.

In the alternative, this Court should reverse and remand to correct the district court's procedural errors in conducting *Pike* balancing, including overlooking genuine disputes of material fact, improperly weighing evidence to draw inferences in favor of the City.

The district court committed multiple procedural errors that independently warrant vacatur and remand. The district court allowed the City to introduce eleventh-hour evidence without providing Plaintiffs an opportunity to respond, misapplied the City's burden to establish entitlement to summary judgment under Federal Rule of Civil Procedure 56, and failed to address all of Plaintiffs' claims.

## VI.   STANDARD OF REVIEW

A district court decision on cross-motions for summary judgment is reviewed de novo. *Csutoras v. Paradise High School*, 12 F.4th 960, 965 (9th Cir. 2021). This Court "consider[s], viewing the evidence in the light most favorable to the nonmoving party, whether there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (citation omitted).

## VII.  ARGUMENT

The Constitution directs that "Congress shall have the power … [t]o regulate Commerce … among the several States."  U.S. Const. art. I, § 8, cl. 3.  Although the Commerce Clause "'is framed as a positive grant of power to Congress,'" the Supreme Court has "long held that th[e] Clause also prohibits state laws that unduly restrict interstate commerce" through its "'negative'" or "'dormant'" aspect. *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019) (citations omitted); *see, e.g.*, *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015) (en banc).  The "'negative' aspect of the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. v. Limbach*, 486 U.S. 269, 273 (1988).

In implementing that prohibition, courts apply "two primary principles" relevant here.  *South Dakota v. Wayfair*, 585 U.S. 162, 1734 (2018).  "First, state regulations may not discriminate against interstate commerce; and second, States may not impose undue burdens on interstate commerce." *Id.*  "State laws that discriminate against interstate commerce face 'a virtually *per se* rule of invalidity.'" *Id.* (quoting *Granholm v. Heald*, 544 U.S. 460, 476 (2005)).  By contrast, when a state law regulates "even-handedly," courts examine whether it "effectuate[s] a legitimate local public interest" and whether "the burden imposed on [interstate]

20

commerce is clearly excessive in relation to the putative local benefits.'" *Id.* (quoting *Pike* , 397 U.S. at 142). The latter approach is sometimes referred to as "*Pike* balancing." *Flynt v. Bonta*, 131 F.4th 918, 925 (9th Cir. 2025). The Ordinances are *per se* invalid and flunk the *Pike* balancing test, as well. The district court' contrary conclusions should be reversed.

### A. The Ordinances Violate the Commerce Clause because they facially discriminate against out-of-state interests without valid justification

#### 1. The Ordinances Discriminate Against Out-Of-State Owners

The "'core'" of modern dormant Commerce Clause doctrine is the "antidiscrimination principle." *Pork Producers*, 598 U.S. at 369 (quoting *Camps Newfound*, 520 U.S. at 581).[7] For purposes of dormant Commerce Clause analysis, "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste*, 511 U.S. at 99. A state or municipal law can discriminate against out-of-state interests even if it does not "involve a total prohibition" on out-of-state commerce. *Camps Newfound*, 520 U.S. at 578. Likewise, a law discriminates against out-of-

---

[7] The Supreme Court's decision in *Pork Producers* arguably narrowed the extraterritorial-regulation branch of the dormant Commerce Clause doctrine—which is not at issue in this case—but the Court's decision "reaffirmed" the antidiscrimination principle, which is at issue here. *Flynt*, 131 F.4th at 923. This case also does not implicate the branch of the dormant Commerce Clause doctrine involving direct regulation of interstate commerce. *See Granholm*, 544 U.S. at 487.

state interests for dormant Commerce Clause purposes even if some "in-state [interests] … are also covered by the" restriction. *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 391 (1994); *see, e.g.*, *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354 & n.4 (1951).

This is a straightforward case of discrimination against out-of-state interests. Before the 2016 Ordinances were enacted, Hood River residents *and* out-of-state owners like Plaintiffs could rent their Hood River properties to vacationers on equal terms. Under the 2016 Ordinances, *only* Hood River residents—*not* out-of-state owners—could offer their properties as vacation rentals or hosted homeshares. That is blatant discrimination against out-of-state interests. Apparently recognizing as much, the City scrambled to respond to this lawsuit by enacting Ordinance 2083, which allows out-of-state owners to offer vacation rentals or hosted homeshares *if* they satisfy certain onerous conditions, including finding an idiosyncratic Hood River resident willing to rent the home for more than a year but repeatedly leave it to, or share it with, vacationers. Not only is that skim-milk alternative largely hypothetical, it also does not eliminate the discrimination, because out-of-state owners are still subject to a different and less favorable legal regime than otherwise-identical Hood River property owners who are residents.

22

### 2. The 2016 Ordinances Discriminate Against Out-Of-State Owners

The discrimination against out-of-state owners in the 2016 Ordinances is unmistakable. Those Ordinances together (1) permit vacation rentals and hosted homeshares in Hood River only with a license, and then (2) limit licenses to Hood River residents. HRMC § 5.10.040-050. By definition, an out-of-state owner is not a Hood River resident and—under the 2016 Ordinances—cannot obtain a license to operate vacation rentals or hosted homeshares. The 2016 Ordinances thus expressly reserve the short-term rental market for local residents alone. In effect, the City has hung out a sign that says "out-of-staters need not apply" to host vacation rentals or homeshares in Hood River. That is paradigmatic discrimination against out-of-state interests. *See, e.g.*, *Granholm*, 544 U.S. at 472 ("The mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States.").

Indeed, appellate courts that have evaluated restrictions similar to the 2016 Ordinances—i.e., requirements that only primary residents can obtain licenses for short-term rentals—have uniformly recognized them as facially discriminatory under the dormant Commerce Clause. *See Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 326 (5th Cir. 2022); *South Lake Tahoe Prop. Owners Grp. v. City of South Lake Tahoe*, 310 Cal. Rptr. 3d 9, 33-36 (Ct. App. 2023). The district court did not conclude otherwise, and the City has not seriously defended the 2016 Ordinances.

23

To the contrary, Hood River effectively conceded the illegality of Ordinances 2026 and 2028 when it hurried to enact Ordinance 2083 after this lawsuit was filed.

### 3. Ordinance 2083 Does Not Eliminate The Facial Discrimination Against Out-Of-State Owners

The City's central argument—and the holding of the district court—is that Ordinance 2083 solved the discrimination problem that was created by the 2016 Ordinances by purportedly allowing out-of-state owners to participate in the Hood River short-term rental market through a long-term local tenant. But that position fundamentally misunderstands the meaning of discrimination for purposes of the dormant Commerce Clause. As the Supreme Court has clarified, such "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste*, 511 U.S. at 99. That description plainly applies to Hood River's short-term rental regulations even after amendment by Ordinance 2083. Local residents can obtain a license to offer vacation rentals or hosted homeshares without any further steps, while out-of-state owners can do the same only if they identify a local tenant willing to rent the property for more than a year and leave or share it periodically with short-term renters. To describe those two starkly different paths for making identical use of identical property is to illustrate " 'differential treatment' of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* Ordinance 2083 is accordingly an attempted "workaround that does not work."

24

*Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, __ F.4th __, 2025 WL 2313142, at *10 (2d Cir. Aug. 12, 2025).

Close inspection of Ordinance 2083 reveals just how unequal and unrealistic its purported alternative for out-of-state owners is. Consider two neighboring Hood River properties, one owned by a Hood River resident and the other by a couple like the Panabakers who live across the bridge in Washington. If the Hood River resident wants to rent out his home to a handful of one-week renters, he can obtain a license to do so—and earn substantial income as a result—by simply presenting documents demonstrating his residency. Then, when the rentals are over, he can return to his home. But if the out-of-state couple wants to rent out their Hood River home for the same handful of weeks, they must surmount a far more daunting set of legal and administrative hurdles. They must (i) enter into a lease that is longer than 12 months in duration; (ii) with a tenant who is or is able to become a Hood River resident; and (iii) who agrees to repeatedly leave the home while short-term renters use it or share the property with short-term renters. Even if the out-of-state couple identifies such an idiosyncratically flexible local tenant among Hood River's population of roughly 8,000 residents, the couple must then wait to offer any rentals until the local tenant files a tax return for the previous year with a residential address at the couple's property. And after that, if the couple wants to use the home for their own vacation,

they must either share it with the tenant or convince the tenant to vacate the property yet again.[8]

To suggest that the options made available to out-of-state owners by Ordinance 2083 are even remotely equal to those that Hood River makes available for resident owners is to blink reality. It is accordingly unsurprising that the record contains no evidence that even one out-of-state owner has successfully navigated the procedural gauntlet that Hood River has installed to engage in a vacation rental or hosted homeshare. Indeed, under Oregon landlord-tenant law, it is not even clear that an out-of-state owner could lawfully enter into a lease that requires the tenant to vacate the property or share it with short-term renters because a "tenant has the right under a rental agreement to occupy the dwelling unit *to the exclusion of others*," Or. Rev. Stat. § 90.147(1) (emphasis added), and a lease that requires a tenant forgo statutory rights is unenforceable, Or. Rev. Stat. § 90.245(1)(a), (2). Hood River's regime as modified by Ordinance 2083 thus operates in practice as the same type of discriminatory in-state residency requirement that the 2016 Ordinances imposed. The district court's cursory dismissal of these disparate impacts highlights the

---

[8]  That the Ordinances functionally require an out-of-state property owner to give up all personal use of a vacation home in order to obtain a short-term rental license arguably implicates law that when a government imposes permit conditions "unrelated to its legitimate land-use interests, those actions amount to extortion." *Sheetz v. Cnty of El Dorado,* 601 U.S. 267, 268 (2024) (citing *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 837 (1987)).

insufficiency of Ordinance 2083. Contrary to the declarations of every Plaintiff in this case, the district court concluded without explanation or citation to the record that "[t]he Ordinances do not prohibit out-of-state property owners from participating in the short-term rental market." 1-ER-13.

Even if Ordinance 2083 did not operate as a complete ban on short-term rentals by out-of-state owners like Plaintiffs, it would still discriminate against them. As noted above, a state or municipal law can discriminate against out-of-state interests even if it does not "involve a total prohibition" on out-of-state commerce. *Camps Newfound*, 520 U.S. at 578. Ordinance 2083 does so by allowing Hood River residents to offer short-term rentals on their own but permitting out-of-state owners to do so only by engaging what amounts to a local business partner. As a matter of law and common sense, that is not equal treatment; it is favoritism of local interests twice over—once by allowing only local residents to offer short-term rentals without any further burdens, and twice by forcing out-of-state owners to engage local residents as the price of entering Hood River's short-term rental market.

Both the Supreme Court and this Court have repeatedly recognized that imposing such bottlenecks on interstate commerce—but not otherwise-identical local commerce—is discriminatory under the dormant Commerce Clause. In *Granholm*, for example, the Supreme Court concluded that Michigan had discriminated for dormant Commerce Clause purposes when it allowed "in-state

wineries to ship directly to consumers, subject only to a licensing requirement" while requiring out-of-state wineries to sell to "an in-state wholesaler and retailer before reaching consumers." 544 U.S. at 473-74; *see id.* at 474 (similar reasoning for a New York law that "grants in-state wineries access to the State's consumers on preferential terms"). And in *Nationwide Biweekly Admin., Inc. v. Owen,* 873 F.3d 716 (9th. Cir. 2017), this Court concluded that a California law discriminated against out-of-state economic interests when it allowed in-state insurance agencies to obtain a license without further steps but required "out-of-state corporation[s to] either incorporate in California or create a subsidiary incorporated in California." *Id. at 737.* As this Court explained, subjecting out-of-state interests to such disfavored treatment is "precisely what the Supreme Court says cannot be done." *Id.* at 736; *see Granholm*, 544 U.S. at 472 ("States may not enact laws that burden out-of-state producers or shippers simply to give a competitive advantage to in-state businesses."); *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 193 (1994) (describing measures that "handicap[] out-of-state competitors" as "paradigmatic example[s]" of dormant Commerce Clause discrimination because they "violate[] the principle of the unitary national market").

Contrary to the City's argument below, the Ordinances' discrimination against out-of-state interests is "no less discriminatory" because the Ordinances *also* disfavor some in-state owners of Hood River property—*i.e.*, Oregonians who are not

residents of Hood River. *C & A Carbone*, 511 U.S. at 391. The Supreme Court's decision in *Dean Milk* illustrates why. There, the Court struck down an ordinance that (1) made it "unlawful to sell any milk as pasteurized unless it has been processed and bottled at an approved pasteurization plant within a radius of five miles from the central square of Madison," Wisconsin, and (2) prohibited "the sale of milk, or the importation, receipt or storage of milk for sale, in Madison unless from a source of supply possessing a permit issued after inspection by Madison officials," who had no obligation to inspect farms over 25 miles from the city. 340 U.S. at 350. While the ordinance did not expressly distinguish between in-state and out-of-state producers, it had the practical effect of discriminating against all out-of-state producers and only some in-state producers. *Id.* at 354. For dormant Commerce Clause purposes, it was "immaterial that Wisconsin milk from outside the Madison area" was also "subjected to the same proscription as that moving in interstate commerce." *Id.* at 354 n.4. The ordinance "in practical effect exclude[d] from distribution in Madison wholesome milk produced and pasteurized in Illinois," such that it "discriminate[d] against interstate commerce." *Id.* at 354.

The Ordinances at issue here discriminate in an analytically similar way. As in *Dean Milk*, the Ordinances benefit *some* in-state interests (Hood River residents) while burdening *all* out-of-state interests and *some* in-state interests. For this reason, the district court's conclusion that Hood River's Ordinances equally burden out-of-

state owners and Oregonians that do "not reside in [their Hood River] rental as their primary residence" is simply irrelevant. 1-ER-12. In fact, the Fifth Circuit and California Court of Appeal have both rejected defenses by local governments relying on their purported discrimination against in-state residents. *Hignell-Stark*, 46 F.4th at 327; *South Lake Tahoe*, 310 Cal. Rptr. 3d at 33-36. As the Fifth Circuit put it, "local ordinances that discriminate against interstate commerce are not valid simply because they also discriminate against intrastate commerce." *Hignell-Stark,* 46 F.4th at 327. "The fact that the residency requirement also discriminates against intrastate interests doesn't change a thing." *Id.* at 328.

### 4. This Court's Decision In *Rosenblatt* Does Not Support Treating The Ordinances As Nondiscriminatory

The district court concluded that the Ordinances were nondiscriminatory based largely on this Court's decision in *Rosenblatt*. But *Rosenblatt* involved a materially different claim against a materially different law involving a materially different record. Indeed, the challenger in *Rosenblatt* was not an out-of-state property owner at all; she was a "Santa Monica resident" challenging a Santa Monica ordinance restricting short-term rentals, and her theory was that the ordinance's restrictions discriminated against out-of-state *visitors*—not out-of-state *owners*. 940 F.3d at 442; *see id.* at 445-50. Much of the *Rosenblatt* Court's analysis is thus flatly inapposite to the issues presented here.

The City and the district court seize on a passage at the end of *Rosenblatt*'s discrimination analysis noting that Santa Monica's requirement that a primary resident live on-site during a short-term rental "does not require the primary resident in the dwelling to be the owner of the dwelling." *Id.* at 450. The Court observed that the challenger did not "explain how the ordinance would prevent an out-of-state homeowner who owns property in Santa Monica from being able to extract economic value from the property." *Id.* Specifically, the Court stated that that an "out-of-state owner could rent out the property on a long-term basis with a condition that one of the rooms be used for the owner's short-term rentals." *Id.* at 450-51. The Court did not, however, base that statement on anything in the record, nor did the Court provide any analysis of what legal or practical obstacles might impede an out-of-state owner from relying on a local tenant to operate a short-term rental. That is understandable; after all, the challenger in *Rosenblatt* was not an out-of-state owner, so the Court had no need to consider (and arguably no jurisdiction to consider) whether the Santa Monica ordinance discriminated against such an owner. Such "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having so decided as to constitute precedents." *In re Larry's Apartment, LLC*, 249 F.3d 832, 839 (9th Cir. 2001) (quoting *Webster v. Fall,* 266 U.S. 507, 511 (1925)).

31

If anything, *Rosenblatt*'s dicta reinforces why Plaintiffs here—who are entirely differently situated than the challenger there—have established the discrimination that was lacking in *Rosenblatt*. The Court acknowledged that cases like *Granholm* and *Nationwide Biweekly* support a conclusion of discrimination against out-of-state interests when a law imposes sufficient "burdens and costs on out-of-state residents." *Rosenblatt*, 940 F.3d at 451 n.5. Indeed, the Court expressly recognized that a state law would constitute discrimination if it required an out-of-state resident " 'to become a resident in order to compete on equal terms.'" *Id.* (quoting *Nationwide Biweekly*, 873 F.3d at 736).

As explained above, that is exactly what Plaintiffs have established here. There is no evidence in the record that *any* out-of-state owner has been able to participate in the Hood River short-term rental market under the City's highly burdensome scheme requiring a local tenant to live in the property for a year at a time (including to obtain a prior-year tax return). *See* 2-ER-205. Indeed, it is not even clear that Oregon landlord-tenant law permits an arrangement of the kind that Hood River envisions, because state law renders unenforceable a lease that requires a tenant forgo statutory rights, such as the right to exclude others from the dwelling. Or. Rev. Stat. § 90.245(1)(a), (2); *see* Or. Rev. Stat. § 90.147(1); *see also Stanton v. Medellin*, 481 P.3d 1004, 1008-09 (Or. Ct. App. 2021) (explaining that "a landlord and tenant [may] include terms more favorable to the tenant than the statutorily

mandated terms" but not less favorable terms). Because operating a short-term rental with a long-term tenant would necessarily require the tenant to give up the right to occupy the unit or exclude others, any such lease may well be unenforceable under state law. Unlike the hypothetical envisioned by *Rosenblatt*'s dicta, an out-of-state owner of Hood River property thus may *not* be able to "rent out the property on a long-term basis with a condition that one of the rooms be used for the owner's short-term rental." 940 F.3d at 450-51. At a minimum, an out-of-state owner who finds a local resident willing to serve as a business partner—subject to whatever terms that local resident demands—is hardly being allowed "compete on equal terms" with a Hood River resident who has no obligation to contract with such a partner. *Id.* at 451 n.5 (citations omitted). *Rosenblatt* thus provides no basis for disregarding the discrimination against out-of-state interests inherent in Hood River's scheme.[9]

### 5. The City Provides No Sufficient Justification For The Ordinances' Discrimination Against Out-Of-State Interests

"A discriminatory law is 'virtually per se invalid.'" *Dep't of Rev. of Ky. v. Davis*, 553 U.S. 328, 338 (2008) (citations omitted). It can be enforced only if it passes the "strictest scrutiny." *Oregon Waste,* 511 U.S. at 101 (citation omitted).

---

[9]   In the alternative, Appellants preserve the right to ask this Court or the Supreme Court to revisit the holdings of *Rosenblatt* if the panel concludes they control here.

33

The state or municipality must show that the law "is narrowly tailored" to "'advanc[e] a legitimate local purpose,'" *Tennessee Wine*, 588 U.S. at 518 (quoting *Davis*, 553 at 338), and that this purpose "cannot be adequately served by reasonable nondiscriminatory alternatives," *Oregon Waste,* 511 U.S. at 101 (quoting *New Energy*, 540 U.S. at 278). "This is an extremely difficult burden, 'so heavy that 'facial discrimination by itself may be a fatal defect.'" *Camps Newfound*, 520 U.S. at 582 (quoting *Oregon Waste,* 511 U.S. at 101); *see, e.g.*, *Granholm*, 544 U.S. at 476 (invalidating discriminatory law under the dormant Commerce Clause). The City does not seriously argue that the Ordinances could survive strict scrutiny if they are found to be discriminatory, and they cannot.

The City's own evidence—the Housing Needs Analysis from 2015—proves Owners' point, as it specifically enumerated *seventeen* solutions to the City's purported concerns—*none of which discriminated against interstate commerce*. 2-ER-97 – 2-ER-99. "Strategy 1" of the recommendations suggested that the City implement five action items to increase the efficiency of land use within the City. 2-ER-97. "Strategy 3," meanwhile, included *eight* action items implicating the City's own failure to develop or preserve affordable housing. 2-ER-99. It is impossible for the City to disclaim nondiscriminatory means; its own commissioned study proves the opposite. Like virtually all discriminatory laws, the Ordinances are accordingly unconstitutional. *See, e.g.*, *Hignell-Stark*, 46 F.4th at 328-29.

B. **The Ordinances violate the Commerce Clause even if the *Pike* balancing test applies**

Even if the Court were to conclude that the Ordinances are not discriminatory, they are nevertheless invalid under *Pike*. The district court misapplied the *Pike* balancing test by finding that the Ordinances' burdens on interstate commerce are outweighed by local benefits; in fact, the record supports only the contrary conclusion. This Court should accordingly reverse and direct entry of summary judgment for Plaintiffs. In the alternative, this Court should vacate and remand for trial because the district court misapplied the summary judgment standard by overlooking genuine disputes of material fact and impermissibly drawing inferences in favor of the City.

1. **This Court Should Reverse And Direct Judgment For Plaintiffs Because The Ordinances Impose Substantial Burdens On Interstate Commerce That Clearly Exceed Any Local Benefits**

Even facially neutral regulations are invalid under the dormant Commerce Clause when "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142; *see, e.g.*, *Davis*, 553 U.S. at 353 ("[E]ven nondiscriminatory burdens on commerce may be struck down on a showing that those burdens clearly outweigh the benefits of a state or local practice."). *Pike* balancing proceeds in two steps. *First*, "a plaintiff must demonstrate that a challenged law imposes a 'substantial' or 'significant' burden on

interstate commerce." *Flynt*, 131 F.4th at 925 (citation omitted). *Second*, "if plaintiffs show a substantial burden on interstate commerce, the court proceeds to determine whether that burden 'is clearly excessive in relation to the putative local benefits.'" *Id.* (quoting *Pike*, 397, U.S. at 142).

**a.      The Ordinances Substantially Burden Interstate Commerce**

The Ordinances substantially burden interstate commerce under any plausible understanding of that concept. Both the Supreme Court and this Court have emphasized that burdens disfavoring out-of-state interests are especially problematic under *Pike* balancing, even if they do not constitute facial discrimination subject to strict scrutiny. *See, e.g.*, *Pork Producers*, 598 U.S. at 377 (discussing *Pike* balancing decisions that "turned in whole or in part on the discriminatory character of the challenged state regulation") (citation omitted); *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1015 (9th Cir. 1994) (explaining that the "impacts [of a challenged regulation] that fall more heavily on out-of-state interests" have "special importance in the balance with the state's putative interest").

Here, Plaintiffs presented evidence to the district court that the Ordinances make it impossible to "comply with the residency requirements that went into effect in Hood River in 2023." 2-ER-153 ¶5 (Panabaker); 2-ER-150 at ¶ 5 (Hutson); 2-ER-148 ¶5 (Johnson); 2-ER-146 ¶5 (Thompson); 2-ER-143 ¶5 (Taylor/Blanchet); 2-ER-141 ¶5 (Berenson). As discussed above, under Hood River's regulatory

regime, out-of-state owners face a number of significant burdens that residents do not. Out-of-state owners must negotiate non-standard lease terms, and find tenants who are willing to enter leases longer than a year and also agree to either periodically vacate the property or share it with rental guests. Even if such a tenant exists, the out-of-state owner must wait for the tenant to obtain all three documents necessary to prove Hood River residency. And even if all these requirements are satisfied, Oregon landlord-tenant law at least raises doubts about the lawfulness of leases allowing for short-term rentals under the terms Hood River prescribes. *See* Or. Rev. Stat. § 90.147(1), 90.245(1)(a), (2). Worse still, by entering such a lease, out-of-state owners must necessarily give up their own personal use of the property. Hood River residents seeking to offer short-term rentals face none of these hurdles. Accordingly, regardless of whether the Ordinances facially discriminate against out-of-state owners, their discriminatory impact on such owners falls inside "*Pike*'s heartland." *Pork Producers*, 598 U.S. at 379-80.

Even if the burdens imposed upon interstate commerce are considered non-discriminatory, the balancing of the *Pike* inquiry favors allowing plaintiffs to make their proof at trial. *See id.*; *Davis*, 553 U.S. at 353 ("we generally leave the courtroom door open to plaintiffs invoking the rule in *Pike,* that even nondiscriminatory burdens clearly outweigh the benefits of a state or local practice"); *Edgar v. MITE Corp.*, 457 U.S. 624, 643-46 (1982). *First*, an out-of-

37

state owner seeking to operate a short-term rental in Hood River must lease his or her property to a Hood River resident for more than a year. D. Ct. Dkt. 33, at 9. *Second*, the out-of-state owner must negotiate the local tenant's mandatory periodic absences to allow vacation-home rentals. *Id.* *Third*, the out-of-state owner must wait for the tenant to satisfy Hood River's residency requirement. *Id.* All three conditions must be met before the out-of-state owner can even apply for a short-term rental license. And out-of-state owners who can meet these three conditions must sacrifice their personal use of the property. Those burdens on interstate commerce readily qualify as "substantial." *Edgar*, 457 U.S. at 643, 646.

As with facial discrimination analysis, *Rosenblatt* offers no support for the City's position on *Pike*'s substantial-burden analysis. In *Rosenblatt*, this Court emphasized that the plaintiff failed to allege "a high burden on interstate commerce" and instead pled "some negligible burden on the local economy of Santa Monica." 940 F.3d at 453. The *Rosenblatt* plaintiff's complaint therefore failed to allege a violation of the dormant Commerce Clause under *Pike*. *Id.* Specifically, the plaintiff alleged "that Santa Monica's ordinance substantially impair[ed]" the $100-billion national vacation-rental industry. *Id.* at 452. But as this Court recognized, that argument "did not plausibly allege how any lost fraction of the vacation-rental business significantly burden[ed] commerce—let alone interstate commerce." *Id.* at 453. This deficiency is hardly surprising because the plaintiff in *Rosenblatt* was a

Santa Monica resident seeking to offer short-term rentals, not an out-of-state resident seeking to highlight the discriminatory effects of Santa Monica's law. *Id.* at 442.[10]

This case is different. Plaintiffs are out-of-state owners of Hood River property who have—as outlined above—squarely alleged that Hood River's Ordinances impose a substantial burden on interstate commerce. *See* pp. 4-12, *supra*.

### b. The Ordinances' Substantial Burdens On Interstate Commerce Outweigh Any Local Benefits

Once a substantial burden is established, this Court "proceeds to determine whether that burden is 'clearly excessive in relation to the putative local benefits.'" *Flynt*, 131 F.4th at 925 (quoting *Pike*, 397 U.S. at 142). Although "courts typically accept the state's articulation of the law's claimed benefits," they need not do so when the claimed benefits are "illusory." *Id.* (citations omitted). As the Supreme Court has explained, the mere "incantation of a purpose to promote the public health or safety does not insulate a state law from Commerce Clause attack. Regulations designed for that salutary purpose nevertheless may further the purpose so marginally, and interfere with commerce so substantially, as to be invalid under the Commerce Clause." *Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 670 (1981)

---

[10] To the extent *Rosenblatt* suggests that "*Pike* balancing is required *only* if the challenged law has a discriminatory effect on interstate commerce," 940 F.3d at 452 (citation omitted), that position was abrogated by the Supreme Court in *Pork Producers*, *see* p. 20 n. 7, *supra*.

(plurality opinion). In either case, a state's legislative judgment should be given "less deference" if it "bears disproportionately on out-of-state residents." *Id.* at 675-76.

On the benefits side of the scale, the City has offered nothing more than a vague hodgepodge of purported interests. Hood River argued in its summary judgment briefing that the Ordinances were "motivated by two main concerns:" (1) increasing the supply "of long-term rentals available for year-round workers as a result of the short-term rental market" and (2) maintaining "the livability of neighborhoods due to the clustering of vacation rentals." 2-ER-127.

These "interests" are speculative and illusory at best. Benefits are illusory when the municipality "fail[s] to make even a colorable showing that the regulations contribute to" its asserted goals. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1155-56 & n.17 (9th Cir. 2012) (quoting *Raymond Motor Transp. Inc. v. Rice*, 434 U.S. 429, 445 (1978)). That is what happened here. Hood River has not made any showing that a residency requirement for operators of short-term rentals contributes to housing supply or maintaining "the livability" of the City.[11] As noted, the City has not shown that any out-of-state owner of Hood River property

_____

[11] As discussed further below, the City submitted a declaration for the first time on the day of the district court's summary judgment hearing purporting to address the Ordinances' impact on housing supply. But that declaration was not properly considered and does not support the City's position in any event.

has successfully engaged a local tenant to rent the property for more than a year while partnering in the operation of short-term rentals, so the purported contribution of the Ordinances to long-term housing is zero. And City's vague invocation of "livability"—a thinly disguised euphemism for discrimination against outsiders—is equally unsupported. The City's assertions also directly contradict its own acknowledgment that Hood River is a major tourist destination in the Columbia River Gorge—the economy of which is largely dependent on out-of-town visitors.[12] Under the City's own characterization, tourism and the lodging options necessary to host visitors are a fundamental part of Hood River's character. Notably, the City's summary judgment briefing did not explain why placing additional burdens on out-of-state owners relative to Hood River residents helps advance housing affordability or the character of the City. 2-ER-126 – 2-ER-128.

Courts have struck down regulations supported by similarly vague or illusory interests under *Pike*. In *Edgar*, the Supreme Court struck down an Illinois law that required any company with shareholders residing in Illinois to register any tender offer with the Secretary of State. 457 U.S. at 643-46. While "protecting [Illinois] investors is plainly a legitimate state objective," the Court was "unconvinced that the Illinois Act substantially enhance[d]" local shareholder interests. *Id.* at 644. This

---

[12] *See City of Hood River*, *supra* note 1 (noting that the City experiences "seasonal influxes of visitors" and that "Hood River's food and beverage scene continues to grow and impact the economy and tourism in positive ways").

was because the disclosures required by the act were unlikely to "enhance the shareholders' ability to make informed decisions" about tender offers. *Id.* at 644-45. Because the challenged law's ability to achieve its goals was far outweighed by its burdens on interstate commerce, the law failed *Pike* balancing. See *id.* at 643-46. So too here. To the extent the City has legitimate local interests supposedly advanced by its Ordinances, it cannot explain how the Ordinances will actually help achieve those goals.

The practical effect of the Ordinances is to exclude out-of-state property owners from the short-term rental market entirely—or otherwise significantly hinder out-of-state participation in that market. Therefore the substantial burdens Hood River imposes on interstate commerce clearly outweigh any benefits flowing from Ordinances that impermissibly favor in-state interests. Accordingly, this Court should reverse and direct entry of summary judgment for Plaintiffs.

### 2. In The Alternative, This Court Should Vacate And Remand Because The District Court Impermissibly Overlooked Genuine Issues Of Material Fact And Drew Inferences In Favor Of The City

If this Court were not to reverse and direct judgment for Plaintiffs, it should vacate the summary judgment order and remand for trial because the district court improperly overlooked genuine issues of material fact related to the burdens and benefits of the Ordinances. Such "genuine disputes of material fact preclude summary judgment." *Rice v. Morehouse*, 989 F.3d 1112, 1116 (9th Cir. 2021). In

eliding these disputes, the district court impermissibly weighed evidence and drew inferences in favor of the City. The district court thus overstepped its role at summary judgment, and further proceedings are necessary to resolve the factual disputes.

*Pike* balancing is an inherently fact-intensive inquiry. The Supreme Court has explained that dormant Commerce Clause analysis requires "a sensitive, case-by-case analysis of purposes and effects." *West Lynn Creamery*, 512 U.S. at 201. In applying this standard, courts recognize that the "fact-bound" nature of *Pike* balancing "counsels against a premature dismissal" without "investigation" into the burdens and benefits of a challenged regulation. *Colon Health Ctrs. of Am., LLC v. Hazel*, 733 F.3d 535, 546 (4th Cir. 2013). Courts have specifically reversed grants of summary judgment where the record was not sufficiently clear to conduct *Pike* balancing. *See, e.g.*, *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 261 F.3d 245, 263-64 (2d Cir. 2001) (reversing summary judgment and remanding to allow for "adequate discovery" on *Pike* balancing, "which will undoubtedly assist the district court in this fact-intensive determination"); *Town of Southhold v. Town of East Hampton*, 477 F.3d 38, 51 (2d Cir. 2007) (reversing summary judgment where "[g]enuine issues of material fact ... exist on" the burden and "benefits side of the *Pike* equation").

43

For example, in *Association to Preserve and Protect Local Livelihoods v. Sidman*, 147 F.4th 40 (1st Cir. 2025), the First Circuit vacated a district court's *Pike* balancing analysis for failing to account for the "substantial magnitude" of an ordinance's burdens or the "potentially marginal nature" of its benefits—such that its conclusion of whether the burdens were "clearly excessive" was fundamentally flawed. *See id.* at 65-72. There, the town of Bar Harbor, Maine enacted an ordinance capping the number of visitors that could disembark from cruise ships in the town on any given day. *Id.* at 44. The First Circuit concluded that Bar Harbor's asserted interest in promoting public safety would be "marginal" because any benefits from the challenged ordinance "would be confined to the waterfront area." *Id.* at 68. The court further concluded that it was not sufficiently clear from the record whether the town's purported interest in alleviating congestion would be furthered by the ordinance. *See id.* at 69-71. Against this backdrop, the court concluded that further fact finding was necessary to determine whether the ordinance's benefits outweighed its impact on interstate commerce. *Id.* at 69-72.

Here, the district court overlooked numerous factual disputes and instead impermissibly drew inferences in favor of Hood River. *First*, the court summarily concluded that "[t]he Ordinances do not prohibit out-of-state property owners from participating [in] the vacation home rental market," 1-ER-12, without acknowledging Plaintiffs' declarations that the Ordinances' burdens on out-of-state

owners are so onerous as to exclude them from the short-term rental market entirely. The district court also declined to grapple with provisions of Oregon landlord-tenant law that at least raise doubts about an out-of-state owner's ability to enter a long-term lease that would also allow short-term rentals. 1-ER-12 & n.2. Although Hood River may dispute those assertions, Plaintiffs have at a minimum created a genuine issue of fact as to whether the Ordinances exclude them from the short-term rental market in Hood River entirely.

*Second*, the district court provided no support for its conclusion that "[o]ut-of-state owners, who already engage possible tenants and negotiate leases regularly as part of their business, face minimal additional requirements to obtain a short-term rental license" under Hood River's Ordinances. 1-ER-14. Notably, the district court cited no evidence in the record that Plaintiffs "engage possible tenants and negotiate leases regularly as part of their business," *id.*, and Plaintiffs never submitted evidence or declarations to that effect. Because Oregon law facially distinguishes between a "tenant" and "vacation occupancy," *compare* Or. Rev. Stat. § 90.100(51) with Or. Rev. Stat. § 90.100(54); *see also* Or. Rev. Stat. § 90.110(6), the mere fact that Plaintiff Owners offer short-term rentals does not mean they "engage tenants" on a regular basis. To the extent the district court's order relied on this factual assertion unsupported by the record, summary judgment was improper.

Indeed, the district court acknowledged Plaintiffs' evidence that in order to operate short-term rentals under the Ordinances, they may:

> have to enter into leases that specify that a long-term tenant would vacate the property at times to permit short-term rentals, lease their property for longer than a year in order to have a tenant that covers the entirety of the short-term rental license period, negotiate periodic absences, or wait for a tenant to update their identity documents to show proof of residence.

1-ER-14. But nowhere does the district court explain its conclusion that the claims about these burdens are "based on speculation" or that these requirements "do not constitute a substantial burden" on out-of-state owners. *Id.* The district court instead seemed to believe that the Ordinances required only one proof of Hood River residence—when in fact they require three. *See* 1-ER-5. The City is free to challenge the scope of the burdens Plaintiffs assert, but such factual disputes cannot be resolved at summary judgment.

*Third*, the district court impermissibly made an evidentiary finding by concluding that "[a]lthough plaintiffs are concerned about the possibility of negotiating a non-standard lease agreement, *it does not seem implausible* that a long-term tenant might spend 275 days or fewer per year in Hood River ... otherwise making the home available for the remaining ninety days of the year." 1-ER-15 (emphasis added). Such speculation is not appropriate at summary judgment. *See Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1035-37 (9th Cir. 2005) (reversing summary judgment where district court improperly weighed evidence).

At a minimum, Plaintiffs are entitled to discovery on the feasibility of the non-standard lease terms that Hood River's Ordinances would require.

*Fourth*, the district court confusingly found that "[t]o the extent [Plaintiffs'] concerns materialize, they would do so equally, to all persons renting out property in Hood River that is not their primary residence, regardless of their state of residence." 1-ER-15. As a threshold matter, this conclusion is legally irrelevant because the mere fact that a regulation burdens some in-state interests as well as out-of-state interests does not render it constitutional. *See C & A Carbone*, 511 U.S. at 391. The relevant question is how the Ordinances treat Hood River residents relative to out-of-state owners. Again, the district court ignored Plaintiffs' declarations that in seeking to obtain a short-term rental license they would face substantial burdens that the Ordinances do not impose on Hood River residents. And as noted above, the district court made no mention of the City's *own evidence* that there were multiple nondiscriminatory ways to promote housing affordability. *See* 2-ER-96 – 2-ER-99. To the extent the City challenges the scope and impact of these differential burdens, such questions cannot be resolved at summary judgment. *See Town of Southold*, 477 F.3d at 52 (reversing summary judgment under *Pike* where "the District Court did not refer to the conflicts" in evidence at the summary judgment stage).

*Fifth*, in a single sentence, the district court "accept[ed]" the City's explanations for the Ordinances' benefits, and held that the City's "benefits are not 'illusory' and are not outweighed by any alleged burdens on plaintiffs." 1-ER-15. But deference to "legislative judgment" where "the local regulation bears disproportionately on out-of-state residents" is unfounded. *Kassel*, 450 U.S. at 675-76 (plurality opinion); *see also Southern Pacific Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761, 767 n.2 (1945) ("[T]o the extent that the burden of state regulation falls on interests outside the state, it is unlikely to be alleviated by the operation of those political restraints normally exerted when interests within the state are affected.").

Moreover, given that Plaintiffs alleged substantial burdens on interstate commerce, the district court's conclusory balancing of the burdens and benefits is insufficient. Once substantial burdens are established, "courts *will* consider evidence related to a regulation's *actual* benefits to determine if the purported benefits of the regulation are illusory." *Optometrists*, 682 F.3d at 1155-56 (emphasis added). The district court thus had an obligation to assess the Ordinance's real-world benefits, but did not even attempt to undertake that analysis.

## C. The District Court's other procedural errors warrant vacatur and remand

The district court's impermissible inferences in favor of the City are compounded by a series of procedural errors that prevented Plaintiffs from having a fair opportunity to develop the record. These errors further belie genuine disputes

of material fact that preclude summary judgment, and they warrant vacatur and remand for discovery and further proceedings.

### 1. The City Improperly Raised New Factual Arguments At The Summary Judgment Hearing

"The opportunity to refute unfavorable evidence *in some fashion*, ... is an 'immutable' principle of procedural due process." *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1075 (9th Cir. 2015) (citation omitted). Accordingly, "where new evidence is presented" at "summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (citation omitted).

The district court failed to follow that direction. On the day of the summary judgment hearing, the City submitted the Nilsen Declaration, claiming for the first time that 47 new properties had been listed for rental in Hood River following enactment of the Ordinances. *See* 2-ER-22 – 2-ER-23 at ¶ 4. The City then cited this declaration at the hearing as evidence that the Ordinances support the City's stated interest in increasing housing supply. 3-ER-338 at 33:10-19. Plaintiffs immediately responded that the declaration was "brand-new" and "exactly the kind of material we would want discovery on before it would be proper" to consider summary judgment under the *Pike* balancing test. 3-ER-339. Nonetheless, the district court allowed the declaration to remain in the record and concluded without

factual or legal citation that the City's "benefits are not 'illusory' and are not outweighed by any alleged burdens on plaintiffs." 1-ER-15.

This error was not harmless. The City's declaration was the *only* record evidence purporting to establish the impact of the Ordinances. Yet Plaintiffs had no opportunity to question the declarant, respond to his claims, or submit rebuttal evidence. For example, Plaintiffs could have challenged the declaration's factual findings about housing availability in Hood River or the declaration's claim that the Ordinances directly caused a change in housing availability. Similarly, Plaintiffs had no opportunity to develop evidence showing that the Ordinances' substantial burdens on interstate commerce outweigh any benefits established by the City.

By allowing the declaration to remain in the record without providing Plaintiffs an opportunity to respond, the district court violated Plaintiffs' procedural due process rights. In any event, the City's eleventh-hour declaration highlights genuine factual disputes about the burdens and benefits of the Ordinances.

### 2. The City's One-Sentence Memorandum In Support Of Its Cross-Motion For Summary Judgment Is Insufficient

The party moving for summary judgment bears the burden to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be ... genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record ... or (B) showing that the materials cited

do not establish the ... presence of a genuine dispute." *Id.* 56(c)(1). In applying this standard, the Supreme Court has explained that a party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The City's cross-motion for summary judgment cannot satisfy this standard because it failed to cite any evidence or law. Instead, the City sought to incorporate by reference its *opposition* brief to *Plaintiffs'* motion for summary judgment. 2-ER-47. But that is not sufficient. Courts routinely hold that arguments made only by reference to another filing are waived or forfeited. *See, e.g.*, *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452-53 (6th Cir. 2003) (collecting cases). And district courts do "not have a duty to search for evidence" relevant to a motion for summary judgment. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

The summary judgment standard illustrates the need for application of this principle here. A party *seeking* summary judgment bears the burden of showing that there are no genuine issues of material fact. All reasonable inferences must be drawn in favor of the party *opposing* summary judgment. Highlighting this difference, the City's opposition to Plaintiffs' motion for summary judgment is replete with references to disputes of material fact. 2-ER-131, (contesting Plaintiffs' assertion

51

that they cannot satisfy the Ordinance's residency requirement through a long-term tenant); 2-ER-135 (contesting that the Ordinances exclude out-of-state owners from the vacation-rental market entirely); 2-ER-135–2-ER-136. (disputing the legislative intent of the Ordinance). Thus, the City's opposition definitionally cannot serve as the basis for its own cross-motion for summary judgment. Hood River cannot oppose Plaintiffs' motion for summary judgment by raising factual disputes while relying on the same filing to show that there are no genuine disputes of material fact.

The district court dismissed this procedural deficiency in a single terse footnote. It explained that "[b]ecause both parties address the same legal issue in their filings, the Court declines to put form over substance and will not deny defendant's motion on this basis." 1-ER-7 & n.1. But the issue is one of substance, not just form. The City's opposition brief highlights the very disputes of material fact that should preclude summary judgment.[13] The City therefore cannot rely on its opposition to satisfy its burden to "show[] that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

> **3.      The District Court Ignored Plaintiffs' Argument That The**

---

[13]      The sole case cited by the district court is distinguishable for this reason. In *American Motorists Insurance Co. v. Fireman's Fund Insurance Co.*, No. 05-0103 CRB, 2007 WL 735767 (N.D. Cal. Mar. 7 2007), the district court granted a cross-motion for summary judgment that "simply incorporate[d]" an opposition because the only remaining issue in the case was the "*legal question* of [a party's] duty to defend." *Id.* at *1 & n.1 (emphasis added). Unlike here, no party in *American Motorists* asserted a genuine dispute of material fact.

**Ordinances Violate Oregon Zoning Law**

Plaintiffs also argued that the Ordinances at least arguably violate Oregon zoning law by "creat[ing] a retroactive cut to existing lawful vacation rentals." 2-ER-268; 2-ER-18; *see also Yogman v. Parrott,* 937 P.2d 1019 (Or. 1997) (plain meaning of "residential" does not prohibit vacation rental use); *Morgan v. Jackson County*, 414 P.3d 917, 920 (Or. App. 2018) (holding that "To summarily prohibit an established use of land 'would constitute a taking without compensation'") (quoting *Bergford v. Clackamas County,* 515 P.2d 1345, 1347 (Or. App. 1973)). The HRMC permits a nonconforming use of property to continue if such use was "legally allowed when established." HRMC § 17.05.020 (stating that such a use "may continue" so long as certain requirements—not at issue here—are met). Ordinance 2026 modified this section of the HRMC, *see* 2-ER-172 and rendered Plaintiff Owners' use of their Hood River properties in residential zones as "transient"—and thereby "non residential," *see* 2-ER-268; 2-ER-159 – 2-ER-174. Plaintiffs argued that Ordinance 2026's requirement for "in-state, long-term use" was its "central feature." 2-ER-268. Because this requirement was so fundamental to the Ordinance's zoning regulations, Plaintiffs contended it was inseverable under Oregon law. *See* Or. Rev. Stat. § 174.040(2)-(3) (stating that a law is inseverable when its remaining parts "would not have been enacted without the unconstitutional part" or "are incomplete and incapable of being executed" standing alone).

53

The district court completely ignored this argument, which provides a separate basis for invalidating the City's scheme—including Ordinance 2026, which the City did not repeal when it enacted Ordinance 2083. If this Court does not reverse the grant of summary judgment and direct judgment for Plaintiffs on dormant Commerce Clause grounds, it should at least remand for the district court to decide this zoning issue under Ordinance 2026 in the first instance. *See MacIntyre v. Carroll College*, 48 F.4th 950, 956 (9th Cir. 2022) (reversing and remanding summary judgment for consideration of "remaining issues" in the first instance).

## VIII. CONCLUSION

For the foregoing reasons, this Court reverse the district court's judgment and grant Owners summary judgment. In the alternative, this Court should vacate the grant of summary judgment to the City and remand for further proceedings.

## IX. STATEMENT OF RELATED CASES

Appellants are not aware of any related cases.

DATED this 15 day of September, 2025

HEATHER A BRANN PC

By: s/ *Heather A. Brann*
Heather A. Brann

TONKON TORP LLP

By: s/ *Danny Newman*
Paul Conable

54

Danny Newman
Paul Balmer
Rosalie Fatta

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By: _s/ *Christopher G. Michel*_
Christopher G. Michel
Andrew H. Schapiro

Attorneys for Appellants

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Ninth Circuit Rule 32-1(a) because this brief contains 13,026 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Times New Roman 14-point font.

DATED this 15 day of September, 2025

HEATHER A BRANN PC

By: _s/ Heather A. Brann_
Heather A. Brann

Attorneys for Appellants

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that on September 15, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

DATED this 15 day of September, 2025

HEATHER A BRANN PC

By:   s/ *Heather A. Brann*
     Heather A. Brann

TONKON TORP LLP


By:   s/ *Danny Newman*
     Paul Conable
     Danny Newman
     Paul Balmer
     Rosalie Fatta

Attorneys for Appellants

044002\00001\18791235v2