No. 25-2638

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

———————————————————————

RUSTON PANABAKER, SHERI PANABAKER, JENNIFER L. HUTSON, DAVID T. JOHNSON, SUSANNA JOHNSON, ROBERTA THOMPSON, MATTHEW BERENSON, MARK D. TAYLOR, and PAULA BLANCHET, Plaintiffs-Appellants,

v.

CITY OF HOOD RIVER, Defendant-Appellee.

———————————————————————

On Appeal from the United States District Court for the District of Oregon No. 3:24-cv-00901-AN ♦ Honorable Adrienne Nelson

———————————————————————

**APPELLEE'S CORRECTED ANSWERING BRIEF**

———————————————————————

Christopher Lundberg
Matthew E. Malmsheimer
Haglund Kelley LLP
2177 SW Broadway
Portland, OR 97201
(503) 225-0777
clundberg@hk-law.com
mmalmsheimer@hk-law.com

Attorneys for Defendant-Appellee

Heather A. Brann
HEATHER A. BRANN PC
PO Box 11588
Portland, OR 97211
(503) 490-6563
branns@earthlink.net

Paul Conable
Danny Newman
Paul Balmer
TONKON TORP LLP
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
(503) 802-2072
paul.conable@tonkon.com
danny.newman@tonkon.com

paul.balmer@tonkon.com

Christopher G. Michel
Andrew H. Schapiro
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, DC 20005
(202) 538-8000
christophermichel@quinnemanuel.com
andrewschapiro@quinnemanuel.com

Attorneys for Plaintiffs-Appellants

June, 2026

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................1

II. JURISDICTIONAL STATEMENT ................................................2

III. ISSUES PRESENTED FOR REVIEW ........................................2

IV. STATEMENT OF THE CAUSE ..................................................3

    A.    The City of Hood River has Experienced Rapid Growth since 2000 ..................................................................3

    B.    The Stock of Affordable Housing has not Kept Pace with that Growth ....................................................................3

    C.    The City's Lack of Affordable Housing was a Threat to its Economy ........................................................5

    D.    The City's Housing Needs Analysis Recommended Regulation of Short-Term Rentals as One Strategy to Bridge the Gap ......................6

    E.    In 2016, the City Adopted a Short-Term Rental Ordinance as One Policy Tool to Improve Housing Access ..............................................7

    F.    In 2024, the City Amended its Short-Term Rental Ordinance Following this Court's Decision in *Rosenblatt* ......................................9

V. SUMMARY OF ARGUMENT .....................................................10

VI. LEGAL STANDARDS ................................................................10

VII. ARGUMENT ................................................................................11

    A.    The District Court Properly Dismissed Appellants' Action ................12

    B.    The City of Hood River's STR Ordinance Does not Discriminate Against Out-of-State Entities .............................................12

i

1.     The STR Ordinance is not facially discriminatory ....................13

2.     The STR Ordinance does not have a discriminatory effect .......17

C.     The City of Hood River's STR Ordinance has No Impact on Interstate Commerce ..................................................................19

D.     Hood River's STR Ordinance Advances an Important Public Policy..........................................................................................21

E.     Appellants' Subsidiary Arguments do not Support Reversal..............23

1.     There were no disputed issues of material fact .........................24

2.     The district court did not err in considering the Nilsen declaration ...............................................................................25

3.     The City of Hood River properly supported its cross-motion for summary judgment ............................................................26

4.     Appellants failed to timely raise any zoning arguments............27

VIII.  CONCLUSION.................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
948 F.2d 536 (9th Cir. 1991) ....................................................................28

*Allstate Ins. Co. v. Abbott*,
495 F.3d 151 (5th Cir. 2007) ....................................................................15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................25

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
476 U.S. 573 (1986) .................................................................................11

*Carmen v. San Francisco Unified School Dist.*,
237 F.3d 1026 (9th Cir. 2001) .................................................................26

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................11

*Cherry Hil Vineyard, LLC v. Baldacci*,
505 F.3d 28 (1st Cir. 2007) ................................................................15, 16

*CTS Corp. v. Dynamics Corp. of Am.*,
481 U.S. 69 (1987) ...................................................................................21

*Exxon Corp. v. Governor of Maryland*,
437 U.S. 117 (1978) ............................................................................18, 20

*Flynt v. Bonta*,
131 F.4th 918 (9th Cir. 2025) ........................................................19, 20, 21

*Hignell-Stark v. City of New Orleans*,
154 F.4th 345 (5th Cir. 2025) ..................................................................16

*Kassel v. Consolidated Freightways Corp.*,
450 U.S. 662 (1981) .................................................................................21

*Kivett v. Flagstar Bank, FSB*,
  154 F.4th 640 (9th Cir. 2025) .................................................................10

*Koch v. Lewis*,
  62 F.3d 1424, 1995 WL 453247 (9th Cir. 1995)................................................27

*In re Larry's Apartments, LLC*,
  249 F.3d 832 (9th Cir. 2001) .................................................................28

*Maine v. Taylor*,
  477 U.S. 131 (1986)................................................................12, 13

*Moskovic v. City of New Buffalo*,
  638 F.Supp.3d 770 (W.D. Mich. 2022) ...........................................................20

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
  682 F.3d 1144 (9th Cir. 2012) ........................................21, 24, 25, 26

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023)................................................................20, 22

*Nat'l Pork Producers Council v. Ross*,
  6 F.4th 1021 (9th Cir. 2021) .................................................................20, 21

*National Ass'n of Optometrists & Opticians LensCrafters, Inc. v.
  Brown*,
  567 F.3d 521 (9th Cir. 2009) ................................................14, 24, 26

*Nationwide Biweekly Admin., Inc. v. Owen*,
  873 F.3d 716 (9th Cir. 2017) .................................................................13

*Northwestern Nat. Ins. Co. v. Corley*,
  503 F.2d 224 (7th Cir. 1974) .................................................................27

*Novato Fire Prot. Dist. v. United States*,
  181 F.3d 1135 (9th Cir. 1999) .................................................................29

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*,
  511 U.S. 93 (1994)................................................................12, 19

*Park Pet Shop, Inc. v. City of Chicago*,
  872 F.3d 495 (7th Cir. 2017) .................................................................15

iv

*In re Parker North Am. Corp.*,
  24 F.3d 1145 (9th Cir. 1994) ...............................................................25

*Paul's Industrial Garage, Inc. v. Goodhue County*,
  35 F.4th 1097 (8th Cir. 2022) ..............................................................15

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970)................................................................*passim*

*Rocky Mountain Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013) ..............................................................18

*Rosenblatt v. City of Santa Monica*,
  940 F.3d 4389 (9th Cir 2019), *cert. den*., ___ U. S. ___, 140 S.Ct.
  2762 (2020)......................................................................*passim*

*Santa Monica Food Not Bombs v. City of Santa Monica*,
  450 F.3d 1022 (9th Cir. 2006) ..............................................................2

**Statutes**

ORS 90.275 ...............................................................................17, 18

**Other Authorities**

Fed. R. Civ. P. 56 ................................................................11, 26, 27

Hood River Municipal Code § 5.10.040.....................................................8

Hood River Municipal Code § 5.10.050.............................................10, 14, 22

Hood River Municipal Code §§ 5.10.060 -.100 ...........................................8, 22

Hood River Municipal Code §17.04.115.................................................8, 22

Hood River Ordinance No. 2026 ...........................................................7

Hood River Ordinance No. 2028 ........................................................7, 28

Hood River Ordinance No. 2083 ...........................................................2

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The City of Hood River is a local government that is not subject to the

FRAP 26.1 disclosure requirement.

DATED this 9th day of June, 2026.

/s/Christopher Lundberg
Christopher Lundberg
Matthew E. Malmsheimer
HAGLUND KELLEY LLP

Attorneys for Appellee City of Hood River

vi

## I.     INTRODUCTION.

This case arises out of the Appellants' unwillingness to accept the City of Hood River's legitimate efforts to increase access to affordable housing across all incomes and maintain the livability of its residential neighborhoods.  One way for the City to accomplish those goals was through the enactment of a Short-Term Rental Ordinance (the "STR Ordinance") that allows for owners of residential properties to earn money in the short-term rental market while incentivizing long-term rentals of second homes that otherwise sit vacant for most of the year.  Rather than comply with the STR Ordinance and help the City in its efforts to meet its growing housing needs, Appellants sued the City contending (wrongly) that its STR Ordinance violates the Dormant Commerce Clause.

Appellants ask this Court to ignore the central feature of Hood River's STR Ordinance; namely, that the requirement to establish "residential use" may be satisfied by a tenant, it does not need to be the property owner.  This opens the door for Appellants to participate in Hood River's short-term rental market, and it applies equally to owners of second homes who live in Hood River, in other cities in Oregon, and in other states in the nation.  As such, in-state and out-of-state owners may participate on equal terms in the Hood River short-term rental market. The City's STR Ordinance also has no discernable impact on interstate commerce and thus does not implicate the *Pike* balancing test.  The evidence that Appellants

rely on to trigger *Pike* is insufficient as a matter of law.  In short, the City's STR Ordinance implicates no Dormant Commerce Clause concerns; it is entirely constitutional.  This Court should thus reject Appellants' appeal and affirm the district court's dismissal.

## II.     STATEMENT OF JURISDICTION.

The City agrees with the Appellants' Statement of Jurisdiction.  However, to the extent that their appeal is based on Hood River Ordinances 2026 and 2028, those Ordinances were amended by Hood River Ordinance 2083 and the portions challenged by Appellants are no longer in effect.  Accordingly, to the extent the appeal rests on the amended provisions, it is moot.  *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1032 (9th Cir. 2006).

## III.    ISSUE PRESENTED FOR REVIEW.

An ordinance only violates the Dormant Commerce Clause where it either: 1) discriminates against out-of-state businesses, or 2) has a substantial negative impact on interstate commerce that is not offset by its local benefits.  Where the City of Hood River's STR Ordinance does not discriminate against out-of-state businesses and has no impact on interstate commerce, let alone a substantial impact, did the district court err in dismissing Appellant's challenge to that ordinance under the Dormant Commerce Clause?

## IV.   STATEMENT OF THE CASE.

### A.   The City of Hood River has Experienced Rapid Growth Since 2000.

In 2000 the City of Hood River had a population of 5,831 people in 2,429 households living in 2,645 housing units.  2-ER-48.  By 2010, the City's population had grown to 7,167 people in 2,972 households living in 3,473 housing units.  2-ER-47.  By 2020, the population was 8,313 people in 3,508 households residing in 3,934 housing units.  2-ER-46.  Between 2000 and 2015, the City grew an average of 1.9% annually, twice the average growth rate of Hood River County and the State of Oregon.  2-ER-74.  That growth is only expected to continue; by 2035, Hood River is anticipated to have 13,845 residents.  2-ER-65.

### B.   The Stock of Affordable Housing has not Kept Pace with that Growth.

Such rapid growth brought a number of challenges to the City, including providing affordable housing to the growing population.  In 2015, City leaders recognized that the population boom was threatening the City's compliance with Oregon State Land Use Planning Goal 10, which requires municipalities to plan, prepare for, and ensure adequate housing for a twenty-year period.  2-ER-39, ¶ 3; 2-ER-61-62.  Accordingly, the City commissioned the Hood River Housing Needs Analysis (the "HNA") to study projected housing needs, propose strategies to meet

anticipated housing demand over the 20-year planning period, and, by doing so, address any housing shortages identified in the study. *Id*.

The HNA found that the City had added 1,100 new dwelling units between 2000 and 2013 but, despite the growth of housing stock, it had actually become less affordable. 2-ER-73. This was true across all income levels but was felt most acutely by lower- and middle-income families. 2-ER-73; 2-ER-79. The HNA found that 32% of Hood River households were cost burdened by the lack of affordable housing, spending more than 30% of their gross income on housing. *Id*. Importantly, "affordable housing" referenced in the HNA did not refer solely to low-income housing but rather referred to housing that fits within the financial means of a given household across all income spectrums. 2-ER-78. The HNA further noted that it "seems likely that without public intervention, housing will become less affordable in Hood River." *Id*. In a tourist-based service economy such as Hood River's, this meant that many low- and middle-income earners could not afford to live in the same city where they worked.

One of the drivers of this lack of affordability was the growth in demand for second homes and short-term rentals ("STRs"). 2-ER-73 & 77. The HNA found that the percentage of seasonal-use and vacant housing grew from 1% in 1990 to 4% in 2000 to 8% by 2010. 2-ER-77. As a result of that growth, 8-12% of the City's housing stock was used as STRs or as secondary vacation homes. *Id*. The

4

impact of STRs and vacant housing on the stock of long-term housing is aggravated by the fact that Hood River is significantly limited in the space to grow within its uniquely constrained Urban Growth Boundary ("UGB"). 2-ER-84-86. The City's location – within the Columbia River Gorge National Scenic Area and adjacent to agricultural land – makes expansion of the UGB all but impossible. *Id*. No city located in the National Scenic Area has expanded its UGB since the Scenic Area Act was adopted in 1987.

### C. The City's Lack of Affordable Housing was a Threat to its Economy.

The economy of Hood River traditionally has been built around agriculture, tourism, and outdoor-sports recreation. 2-ER-48. In the 1990s, the high-tech sector became an important economic engine in Hood River, with high-tech firms becoming some of the City's largest employers. *Id*. Since the advent of the Columbia River Gorge National Scenic Area, agricultural production has shifted primarily from timber to fruit production and wineries. *Id*. Thanks to its location in the Gorge and its proximity to Mt. Hood, Hood River also enjoys significant economic activity from tourism and sports recreation and the related industries that cater to those economic drivers. 2-ER-48-49.

The lack of affordable housing identified in the HNA created challenges to the City's economy. By 2022, one third of Hood River's households were paying

5

more than they could afford for housing, causing long-term residents to move out of Hood River and creating a barrier to businesses trying to hire people.  2-ER-99. Hood River had insufficient affordable housing "at all income levels."  *Id*.  As a result, employers reported difficulty finding "any housing, much less affordable housing" for prospective employees, which in turn negatively impacted their ability to hire and retain workers, not only at "lower wage jobs," but also for "middle wage jobs" such as nurses, police officers, and managers and even "higher wage jobs like surgeons." 2-ER-99; 2-ER-104-105.  The lack of affordable housing "makes attracting and retaining staff difficult for employ[ers] at all levels of wages."  *Id*.

D.     **The City's Housing Needs Analysis Recommended Regulation of Short-Term Rentals as One Strategy to Bridge the Gap.**

Based on its analysis of the affordable housing situation in Hood River, the limited opportunities for future expansion within the City's UGB, and the limited supply of residential land for multifamily development, the 2015 HNA recommended three strategies for meeting Hood River's affordable housing needs: (1) Increasing the efficiency of land use within the UGB; (2) Developing more affordable housing; and (3) Regulating STRs.  2-ER-86-88.  In May of 2022, based on the findings and recommendations of the HNA, the City adopted an Affordable Housing Strategy to address the issue with a variety of policy tools.  2-ER-39; ¶ 4;

6

2-ER-89-109.  Those policy tools included revisions to the townhouse and ADU codes to remove barriers to development and streamline the approval process. 2-ER-95.  They also included expanding utility assistance to low-income households, renovating historic buildings, and imposing a 1% construction excise tax dedicated to affordable housing.  *Id*.  In addition, the City purchased a seven-acre property and partnered with a local housing authority and developer to construct and operate 129 units of affordable housing.  *Id*.  Prospectively, the Affordable Housing Strategy proposed adopting an affordable housing ordinance, creating a new urban renewal district, pursuing a general obligation bond, and land banking.  *Id*.  An additional policy tool to increase access to affordable housing was the regulation of short-term rentals ("STRs").  *Id*.; *see also*, 2-ER-146-148.  Every STR is, by definition, unavailable for long-term tenancy and, at the rates typically charged for STRs, unaffordable as a long-term option.

> **E.** **In 2016, the City Adopted a Short-Term Rental Ordinance as One Policy Tool to Improve Housing Access.**

In 2016, in order to regulate STRs consistent with the recommendations of the HNA and Affordable Housing Strategy, the City adopted a land use ordinance – Ordinance No. 2026 – and a licensing ordinance – Ordinance No. 2028 – to regulate STRs (collectively "the STR Ordinance").  2-ER-146-190.  The City took extensive testimony and public input for more than a year prior to enacting the

7

STR Ordinance. The City held public hearings before the Planning Commission and City Council on September 29, 2015, November 9, 2015, November 16, 2015, April 11, 2016, and April 25, 2016 where it received citizen testimony. 2-ER-40, ¶ 7; 2-ER-147; 2-ER-173. City Council deliberated the STR Ordinance extensively at its regular public meetings on May 9, June 7, June 13, June 27, and July 25, 2016. *Id*. In addition to the oral testimony received at those hearings, the City also received more than 750 pages of written testimony. 2-ER-40-41, ¶ 8. The testimony expressed the full range of opinions about the proposal – everything from complete elimination of STRs to leaving the industry entirely unregulated. *Id*. Many of the plaintiffs in this case participated. 2-ER-198-224.

The STR Ordinance was motivated by two main concerns: (1) The reduction of long-term rentals available for year-round workers as a result of the short-term rental market; and (2) The "erosion of the livability of neighborhoods due to the clustering of vacation rentals." 2-ER-146; 2-ER-172. To those ends, the STR Ordinance limits the number of short-term guests to two per bedroom and the short-term rental of homes in residential neighborhoods to ninety days per year. 2-ER-160-161; Hood River Municipal Code ("HRMC") §§ 17.04.115(B)(2) & (C)(2). It also creates a licensing regime that ensures the STRs are properly operated and maintained and do not become a nuisance in the neighborhood. 2-ER-178; 2-ER-182-183; HRMC §§ 5.10.040; 5.10.060 -.100. In the first iteration

8

of Hood River's STR Ordinance, only residents of the City of Hood River could participate in the STR market because it limited "residential use" of a dwelling to "its continued use as the primary residence of the property owner." 2-ER-161.

**F.      In 2024, the City Amended its Short-Term Rental Ordinance Following this Court's Decision in _Rosenblatt_.**

On July 22, 2024, the City of Hood River amended its STR Ordinance.  2-ER-191-195.  The purposes of the amendments were:  (1) "to preserve and where possible increase the city's available housing for long-term tenancy," and (2) "to preserve the neighborhood character and quality of life that result, in part, from cultural, ethnic, and economic diversity of its resident population."   2-ER-191.  After "seven years of experience with the STR regulations," the City acknowledged "the federal courts' evolving guidance about the constitutionality of various regulatory approaches concerning the use of dwellings as STRs." _Id_.  That evolving guidance included this Court's decision in _Rosenblatt v. City of Santa Monica_, 940 F.3d 439 (9th Cir 2019), _cert_. _den_., ___ U. S. ___, 140 S.Ct. 2762 (Mem.) (2020).

The City also saw the opportunity to increase the availability of long-term rentals by expanding the scope of the "residential use" requirement, which would also provide reasonable opportunities for out-of-state homeowners to satisfy that requirement.  2-ER-191-192.  Accordingly, and following this Court's guidance in

*Rosenblatt*, the amended STR Ordinance allows proof of the residential use of a dwelling through "continued use as the primary residence of *either* the owner . . . *or a tenant under long-term lease with the owner (12-month or longer)*."  2-ER-194; HRMC 5.1.050 (A)(2)(emphasis added).  In other words, out-of-state owners of second homes in Hood River who wish to participate in the short-term rental market need not become a resident to participate.  Instead, they may satisfy the residential-use requirement through a live-in proxy.

## V.  <u>SUMMARY OF ARGUMENT</u>.

The City of Hood River's STR Ordinance does not discriminate against out-of-state property owners.  Instead, it allows them to participate in the short-term rental market in Hood River on equal terms as in-state property owners.  The STR Ordinance also has no impact on interstate commerce, let alone a substantial impact.  Accordingly, the STR Ordinance does not violate the Dormant Commerce Clause, and the district court properly dismissed Appellants' action.  This Court should affirm that dismissal.

## VI.  <u>LEGAL STANDARDS</u>.

This Court reviews the district court's decision on cross motions for summary judgment *de novo*.  *Kivett v. Flagstar Bank, FSB*, 154 F.4th 640, 644 (9th Cir. 2025).  This court views the evidence in the light most favorable to the nonmoving party to determine whether there are genuine issues of material fact

and whether the district court correctly applied the relevant law. *Id*. The plain language of Rule 56(c) "mandates the entry of summary judgment" against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## VII.  ARGUMENT.

The Supreme Court has adopted a "two-tiered approach to analyzing state economic regulation under the Commerce Clause." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986). First, if an ordinance directly regulates interstate commerce or discriminates against out-of-state economic actors in favor of in-state economic interests, the Court has generally struck down the statute. *Id*. at 579. Second, where an ordinance has only indirect effects on interstate commerce and regulates market actors evenhandedly, the Court has examined whether the burden on interstate commerce clearly exceeds the local benefits of the ordinance. *Id*. A facially neutral law , such as the City's STR Ordinance, "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) ("*Pike*"). This Court follows that two-step analytic framework. *Rosenblatt*, 940 F.3d at 444.

///

11

**A.**     **The District Court Properly Dismissed Appellants' Action.**

Appellants do not argue that the STR Ordinance directly regulates interstate commerce.  Instead, Appellants contend that the STR Ordinance is discriminatory and that, even if not discriminatory, it fails the *Pike* balancing test.  Appellants are simply wrong.  The STR Ordinance treats owners seeking to rent second homes exactly the same, whether that owner lives in Hood River, in any other city in Oregon, or in any other state in the Union.  As for *Pike*, Appellants failed to produce any evidence that the STR Ordinance imposes *any* burden on interstate commerce, let alone a substantial burden.  For all those reasons, the district court properly dismissed Appellants' action, ruling that Hood River's STR Ordinance does not violate the Dormant Commerce Clause.  This Court should affirm.

**B.**     **The City of Hood River's STR Ordinance Does not Discriminate Against Out-of-State Entities.**

Discrimination under the Dormant Commerce Clause "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994).  If an ordinance discriminates against out-of-state entities on its face, in its purpose, or in its practical effect, it is unconstitutional unless it "serves a legitimate local purpose," and this purpose "could not be served as well by available nondiscriminatory means." *Maine v.*

*Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986) (internal quotation omitted).

### 1.     <u>The STR Ordinance is not facially discriminatory</u>.

Appellants contend that the STR ordinance is facially discriminatory against out-of-state interests. Opening BR at 22-23.  However, Appellants' argument rests on the predecessor to the current STR Ordinance which permitted short term rentals of residential property only by Hood River residents.  *Id*.  As explained above, that version of the STR Ordinance was amended to expand the opportunity for market participation by nonresidents through a long-term tenant.  There is no longer any requirement that the owner of a residential property reside in Hood River as a condition of participating in the short-term rental market.  As such, the facial discrimination that Appellants claim – forcing out-of-state actors to become Hood River residents – no longer exists.  *Compare Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 737 (9th Cir. 2017) ("[A] requirement of in-state incorporation (even of a subsidiary) is facial discrimination against out-of-state corporations."), *with*, *Rosenblatt*, 940 F.3d at 450-51 (recognizing that an STR regulation that permits out-of-state owners to participate is not facially discriminatory).

Under the current version of the STR ordinance, an out-of-state owner of a second home may satisfy the "residential use" requirement by having a long-term

tenant at the home. HRMC 5.10.050(A)(2). Appellants contend that this does not "eliminate the facial discrimination against out-of-state owners." Opening Br. at 23. Again, Appellants are simply wrong. The Hood River STR Ordinance treats owners seeking to rent a second home identically, whether they are residents of Hood River, residents of somewhere else in Oregon, or residents of another state. While Appellants themselves cannot establish the "residential use" component of the statute, that is because they are not similarly situated to Hood River residents who can. *Rosenblatt*, 940 F.3d at 451.

As in *Rosenblatt*, Appellants here draw a "false equivalence" between Hood River residents seeking to rent their primary residence and property owners seeking to rent a second home. *Id*. The two classes of owner, and their corresponding businesses, are not "similarly situated." *Id*. Owners seeking to rent out a second home will have significantly different overhead and costs, different dates of availability, different vacancy rates and durations, and will offer a different quality of rental property than those renting out a primary residence. Where market participants have "different responsibilities, different purposes, and different business structures," they are not similarly situated even if they compete in the same market. *National Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 527-28 (9th Cir. 2009). While the STR Ordinance may impose different business requirements on Appellants (and other owners of second

14

homes) than those renting their primary residence, that is irrelevant.  *Id*.  What matters is that Appellants are "not precluded" from operating in Hood River.  *Id*.

Such distinctions based on business form rather than domicile are perfectly acceptable under the Dormant Commerce Clause.  *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 161 (5th Cir. 2007).  That is true whether the distinction is the short-term rental of a primary residence vs. a second home, *Rosenblatt*, 930 F.3d at 450-51, or some other difference in the market participants' businesses.  *Paul's Industrial Garage, Inc. v. Goodhue County*, 35 F.4th 1097, 1100 (8th Cir. 2022) (holding that a public waste site that processes waste into fuel for electric power plant is not similarly situated to a private waste site that does not have such capability); *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 497-98 & 502 (7th Cir. 2017) (holding that commercial breeders are not similarly situated to public or private animal shelters; "By limiting Chicago pet stores to dogs, cats, and rabbits sourced from public or private nonprofit shelters, the ordinance evenhandedly prohibits *all* large commercial breeders—whether located in Illinois or out of state—from selling dogs, cats, and rabbits to Chicago pet stores.") (emphasis in original); *Cherry Hil Vineyard, LLC v. Baldacci*, 505 F.3d 28, 37-38 (1st Cir. 2007)(holding

15

that small vineyards that sell wine directly to customers in person are not similarly situated to small vineyards that seek to sell directly to customers via the internet).[1]

Nowhere in the Hood River STR Ordinance are out-of-state owners of second homes prohibited from renting those homes in the short-term rental market. By allowing "residential use" to be established through a long-term tenant, the Hood River STR Ordinance mimics the Santa Monica ordinance that this Court ruled was entirely consistent with the Dormant Commerce Clause. *Rosenblatt*, 940 F.3d at 450-51. If anything, the Hood River ordinance is less restrictive that Santa Monica's because it does not require the person establishing "residential use" – either owner or tenant – to be present while the residence is being rented on a short-term basis.

///

---

[1] Appellants will likely rely on a recent Fifth Circuit decision, *Hignell-Stark v. City of New Orleans*, 154 F.4th 345, 360 (5th Cir. 2025), in support of their argument that the "residential use" requirement in Hood River's STR Ordinance is unconstitutionally discriminatory. However, *Hignell-Stark* is inapposite. Unlike the Hood River STR Ordinance, the New Orleans ordinance allows for resident "operators" to serve the on-site oversight function for STRs rather than requiring it to be the property owner. The *Hignell-Stark* court was concerned that requiring out-of-state "operators" who wanted to work as such "to reside on the property year round" would impermissibly require them to become residents of New Orleans. 154 F.4th at 360. In other words, under that reading of the New Orleans ordinance, the residency requirement was simply shifted from one market participant – property owners – to a different market participant – "operators." As explained in detail above, the Hood River STR Ordinance does not require any market participants to become a resident. Rather, the STR Ordinance permits owners of second homes – both in- and out-of-state – to participate in the market on equal terms by way of a live-in proxy. This Court should disregard Appellants' anticipated argument that *Hignell-Stark* somehow supports their position.

### 2. The STR Ordinance does not have a discriminatory effect.

Failing to establish that the STR Ordinance discriminates on its face, Appellants next argue that they are effectively discriminated against because, according to Appellants, they may not rent their second home as a "vacation home rental," which is defined under the STR ordinance as "the transient rental of an entire dwelling unit." Opening Br. at 24-26. Again, false. Nowhere does the STR Ordinance require the long-term tenant of an out-of-state owner to be present in the home for any period of time. That would be ridiculous. Rather, as in *Rosenblatt*, owners of second homes in Hood River can enter into a long-term lease under which the owner may offer a "vacation home rental" when the long-term tenant is not present. 940 F. 3d at 450-51. Alternatively, an owner of a second home can finish the basement or similar space to create a smaller unit for long-term rental or could transform their garage into an accessory dwelling unit ("ADU") in which the long-term tenant could reside while the main house is rented on a short-term basis.

Appellants contend that the subleasing option would violate Oregon's landlord tenant laws. Opening Br. at 25 & 31-32. Not so. Oregon's landlord tenant laws specifically authorize the sort of short-term leasing options contemplated above. ORS 90.275 permits a landlord and tenant to sublease to a secondary tenant through a "Temporary Occupancy Agreement" under which the primary tenant retains the right to occupy the rental "to the exclusion of others."

17

ORS 90.275(2)(a).  Oregon's landlord tenant laws expressly permit the arrangement contemplated in Hood River's STR Ordinance.  It is true that the short-term rental would only be available with the consent of the long-term tenant.  ORS 90.275(1) and (3)(a).  But that does not eliminate short-term rentals.  Many seasonal workers will only want to be in Hood River for a portion of their long-term lease.  Long-term tenants also will take vacations and travel away from their leased residence for periods of time, often coinciding with the high-demand times for short-term rentals such as the winter holidays.  Appellants' argument to the contrary is a red herring.

Importantly, and contrary to appellants' argument, establishing "residential use" through a long-term tenant is necessary for *any* owner of a second home in Hood River who wishes to rent that home on a short-term basis.  That is true for a resident of Hood River with a second home in the city, a resident of another city in Oregon, or a resident of another state.  While Appellants may may find it inconvenient to operate their short-term rentals consistently with those requirements, that is beside the point.  The Dormant Commerce Clause protects interstate markets, not "particular . . . firms . . . structure[s] or methods of operation."  *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127-28 (1978).  The Commerce Clause also does not "guarantee" that market participants "may compete on the terms they find most convenient."  *Rocky Mountain Farmers*

18

*Union v. Corey*, 730 F.3d 1070, 1092 (9th Cir. 2013). Importantly, the Hood River STR Ordinance imposes the same "residential use" requirement on Hood River and Oregon participants as it imposes on out-of-state participants. By definition, that is non-discriminatory. *Or. Waste Sys., Inc.*, 511 U.S. at 99 (discrimination under the Dormant Commerce Clause is "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."). The STR Ordinance does not violate the Dormant Commerce Clause. *Rosenblatt*, 930 F.3d at 450-51. This Court should affirm.

> **C.** **<u>The City of Hood River's STR Ordinance has No Impact on Interstate Commerce</u>.**

Establishing a "substantial" or "significant" burden on interstate commerce is a threshold requirement that Appellants must meet before *Pike* balancing occurs. *Flynt v. Bonta*, 131 F.4th 918, 925 (9th Cir. 2025). They have failed to do so. Appellants failed to produce any evidence that the City's STR Ordinance burdens interstate commerce at all, let alone "substantially" or "significantly." Appellants have produced no data on interstate effects, shifts in markets between states or barriers to commerce among the states. Instead, they rely on nothing more than the testimony of six of their members to claim that the STR Ordinance "makes it impossible" to comply. Opening Br. at 35.

As a matter of law, that is insufficient. *Flynt*, 131 F.4th at 932. The testimony of a small number of affected plaintiffs does not demonstrate any impact on interstate commerce, let alone a substantial one. *Id*. That is because the "loss to some specific market participants" alone does not establish that an ordinance "impedes substantially the free flow of commerce from state to state." *Id*. (quoting *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1033 (9th Cir. 2021)). This court has recognized that even a regulation that costs market participants "millions (if not billions) of dollars" does not necessarily have a substantial impact on interstate commerce. *Flynt*, 131 F.4th at 932 (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 405-06 (2023) (Kavanaugh J., concurring in part and dissenting in part)).

If a regulation that has impacts in the millions or billions of dollars does not impermissibly burden interstate commerce, it is impossible to imagine how the minimal impact by the STR Ordinance amounts to a "substantial" burden on interstate commerce. *Flynt*, 131 F.4th at 932-33. As one district court concluded when analyzing a similar ordinance, the loss of rental income by out-of-state STR homeowners and the reduction of available transient housing due to the elimination of short-term rentals "may have had *no meaningful impact* on interstate commerce." *Moskovic v. City of New Buffalo*, 638 F. Supp. 3d 770, 792 (W.D. Mich. 2022) (emphasis added).

20

While Hood River's STR Ordinance may shift some tourism dollars, both within Hood River and across state lines, that is not a burden on interstate commerce. *Exxon Corp.*, 437 U.S. at 126-27. The Dormant Commerce Clause protects interstate markets, not "particular . . . firms . . . structure[s] or methods of operation." *Id*. at 127-28. A non-discriminatory regulation such as the STR Ordinance that "precludes" Appellants' "preferred" method of operating does not burden interstate commerce because it does not "impair the free flow of [services] across state borders." *Harris*, 682 F.3d at 1154-55. Contrary to Appellants' argument, Hood River's STR Ordinance does not violate the Dormant Commerce Clause under the *Pike* test. *Id*.; *Exxon Corp.*, 437 U.S. at 127-28; *Rosenblatt*, 940 F.3d at 452-53; *Flynt*, 131 F4th at 932-33; *Nat'l Pork Producers*, 6 F.4th at 1033. This Court should affirm.

### D. Hood River's STR Ordinance Advances an Important Public Policy.

Even if this Court were to characterize the impact of Hood River's STR Ordinance as a burden on interstate commerce, that burden would not be clearly excessive as compared to its local benefits. In assessing a regulation's local benefits, this Court may not "second-guess the empirical judgments of lawmakers concerning the utility of legislation." *CTS Corp. v. Dynamics Corp. of Am*., 481 U.S. 69, 92 (1987). Rather, the Court must credit a local benefit "so long as an

examination of the evidence before or available to the lawmaker indicates that the regulation is not *wholly irrational* in light of its purposes." *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 680–81 (1981) (emphasis added).

The STR Ordinance was motivated by two main concerns: (1) The reduction of long-term rentals available for year-round workers as a result of the short-term rental market; and (2) The "erosion of the livability of neighborhoods due to the clustering of vacation rentals." 2-ER-146; 2-ER-146. To those ends, the STR Ordinance limits the number of short-term guests to two per bedroom and the short-term rental of homes in residential neighborhoods to ninety days per year. 2-ER-160-161; HRMC §§ 17.04.115(B)(2) & (C)(2). It also creates a licensing regime that ensures the STRs are properly operated and maintained and do not become a nuisance in the neighborhood. 2-ER-178; 2-ER-182-183; HRMC §§ 5.10.040; 5.10.060 -.100. In its amended version, it provides an incentive for those seeking to rent their second home on a short-term basis to offer those same homes – which would otherwise remain vacant for most of the year – to long term tenants. HRMC 5.10.050(A)(2); 2-ER-191-192. Plainly, the STR Ordinance is not "wholly irrational" in light of its purposes. Rather, it is rationally connected to advancing its stated goals. That is the sort of political decision made by democratically elected officials that this Court may not second-guess. *Nat'l Pork Producers*, 598 U.S. at 383.

22

**E.     Appellants' Subsidiary Arguments do not Support Reversal.**

Finally, Appellants make four subsidiary arguments for why, in their view, the district court should be reversed.  First, according to Appellants, the district court ignored disputed issues of material fact that made summary judgment improper.  Opening Br. at 41-47.  Next, Appellants argue that the district court improperly allowed the City to supplement the record with the Declaration of Dustin Nilsen.  Opening Br. at 48-49.  Appellants also contend that the City failed to properly support its cross-motion for summary judgment.  *Id*. at 49-51.  And finally, Appellants contend that the district court failed to address their argument that the STR Ordinance violates Oregon zoning laws.  *Id*. at 52-53.

As explained below, all those arguments fail.  There were no disputed issues of fact that required a jury decision; even taking Appellants evidence as true they failed to create a genuine issue of fact.  Appellants never objected to admission of the Nilsen Declaration and, even if they had, it had no bearing on the constitutional analysis.  The City fully supported its cross motion for summary judgment by incorporating by reference the briefing from its opposition to Appellants' motion.  And finally, Appellants failed to properly raise the argument regarding the Oregon zoning laws that they advance on appeal in their summary judgment briefing.  Instead, they simply noted at oral argument that those issues supported a

23

"precautionary motion to amend" their Complaint to "add a takings claim." None of Appellants' subsidiary arguments justifies reversal.

### 1. There were no disputed issues of material fact.

Appellants argue that numerous disputed issues of fact preclude summary judgment because, according to Appellants, "*Pike* balancing is an inherently fact-intensive inquiry." Opening Br. at 42. However, as explained in detail above. Appellants failed to meet their burden of producing *any* evidence that the STR Ordinance burdens interstate commerce at all, let alone in a substantial manner. That failure ends the *Pike* analysis. *Harris*, 682 F.3d at 1155; *LensCrafters*, 567 F.3d at 521.

Appellants also criticize the district court for failing to accept their testimony that the burdens imposed by the STR Ordinance "are so onerous as to exclude them from the short-term rental market entirely." Opening Br. at 43-44. However, none of the Appellants' declarations supports their assertion that they were excluded from the market under the *current* STR Ordinance. *See*, 2-ER-130 through 143. Rather, their testimony establishes only that the Appellants could not comply with the residency requirement that was a facet of the previous version of the ordinance "that was enacted in 2023." 2-ER-130, ¶ 5 (Berenson); 2-ER-132, ¶ 5 (Taylor); 2-ER-135, ¶ 5 (Thompson); 2-ER-137, ¶ 5 (Johnson); 2-ER-139, ¶ 5 (Huston); 2-ER-

142, ¶ 5 (Panabaker). As noted, that requirement was eliminated when the STR Ordinance was amended in July 2024. 1-ER-10.

As the district court correctly concluded based on the plain language of the STR Ordinance, "out-of-state residents can participate in the short-term rental market in Hood River by obtaining a license, and they are not required to become residents of Hood River or Oregon to do so." 1-ER-17. The district court also correctly concluded, again based on the plain language of the ordinance, that it applies "equally to all property owners who do use the property as their primary residence, whether they reside in Hood River, elsewhere in Oregon, or out of state." *Id*. Simply put, there were no disputed issues of fact on this record. Appellants have not produced any evidence to the contrary sufficient to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *In re Parker North Am. Corp.*, 24 F.3d 1145, 1153 (9th Cir. 1994).

### 2. The district court did not err in considering the Nilsen declaration.

Appellants complain that the City "improperly raised new factual arguments" by submitting the Declaration of Dustin Nilsen at the summary judgment hearing. Opening Br. at 48-49. However, Appellants did not object to the Nilsen declaration at the time. 3-ER-39, lns. 12-22. They thus waived that objection. *E.E.O.C. v. Harris Farms, Inc.*, 274 Fed. Appx. 511, 514 (9th Cir.

25

2008). In any event, the only position Appellants took was that it would be necessary to follow up on that evidence in order to "come back and argue about [the *Pike*] balancing test on summary judgment." *Id*. Again, Appellants failure to adduce any evidence that the STR Ordinance burdens interstate commerce ends the *Pike* analysis. *Harris*, 682 F.3d at 1155; *LensCrafters*, 567 F.3d at 521. And, even if Appellants had put on sufficient evidence to implicate *Pike* balancing, the Nilsen declaration would be irrelevant because the *Pike* balancing test concerns only the "putative" benefits of the law, not the actual results. *Id*. The district court did not err in receiving the Nilsen declaration.

### 3. The City of Hood River properly supported its cross-motion for summary judgment.

Appellants' view that the City failed to properly support its cross motion for summary judgment is absurd. Incorporation by reference is not only a practical tool to increase efficiency, but it is also entirely consistent with Rule 56, which allows a Party to support its motion by citing to "particular parts of materials *in the record*." (emphasis added). Fed. R. Civ. P. 56(c)(1). The District Court is permitted to decide a cross motion for summary judgment "based on papers submitted on the motion and *such other papers as may be on file and specifically referred to* . . . in the motion papers." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (emphasis added), *see also*

26

*Northwestern Nat. Ins. Co. v. Corley*, 503 F.2d 224, 232 (7th Cir. 1974) (holding that a federal court deciding a summary judgment may consider "*all* papers of record" in addition to the pleadings and materials submitted with the motion)(emphasis added). This Court has previously recognized the wisdom of using incorporation by reference. *Koch v. Lewis*, 1995 WL 453247 at *11-12 (9th Cir. 1995) (holding that the defendant prison officials had adequately supported their opposition to the plaintiff's motion for summary judgment by incorporating by reference the materials cited in the prison officials' cross motion). Appellants' arguments to the contrary miss the mark and should be rejected. The City adequately briefed and supported its Cross Motion for Summary Judgment by incorporating by reference the evidence and arguments in its Opposition to Plaintiffs' Motion for Summary Judgment. Fed. R. Civ. P. 56(c)(1); *Carmen*, 237 F.3d at 1031; *Corley*, 503 F.2d at 232.

### 4. Appellants failed to timely raise any zoning arguments.

Appellants raise for the first time on appeal a zoning law argument. Opening Br. at 51-53. According to Appellants, the "cut to existing lawful vacation rentals" violates Oregon's zoning laws and constitutes an unlawful taking. *Id.* However, Appellants never advanced that argument before the district court as a basis to invalidate the STR Ordinance. Appellants touched on a zoning law argument at oral argument, where they indicated that they intended to file "a

27

precautionary motion to amend to add a takings claim" as an alternative theory in the event the Court dismissed their Dormant Commerce Clause claims. 3-ER-9:15-21. Later in the argument, Appellants made clear that the zoning law argument supported their new takings theory, stating that the City had "changed this standard, but nonconforming use, which goes with the takings claim." 3-ER-9:15-16; 3-ER-15:20 – 16:6. Nowhere did Appellants advance a position that Oregon's zoning laws independently justified invalidating the STR Ordinance. The closest they came was arguing that the zoning laws made the "residential use" requirement in Ordinance 2026 inseverable. 2-ER-256-2-ER-258. As explained above, Ordinance 2028 was amended in 2024; thus, any argument about its severability is wholly irrelevant.

It is well established that this Court will not consider issues that are raised for the first time on appeal and "will not reverse a district court on the basis of a theory that was not raised below." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n.15 (9th Cir. 1991). The district court was not required to search for Appellants' arguments "lurking" in the record. *See*, *In re Larry's Apartments, LLC*, 249 F.3d 832, 839 (9th Cir. 2001) (issues that have not been properly brought to the Court's attention, but "which merely lurk in the record" have not been decided). Having failed to properly raise their zoning law arguments before the district court, Appellants may not rely on them in this appeal.

28

*Novato Fire Prot. Dist. v. United States*, 181 F.3d 1135, 1141 n.6 (9th Cir. 1999).

This Court should disregard Appellants' those arguments out of hand.

## VIII.  <u>CONCLUSION</u>.

For the reasons set forth in detail above, Hood River's STR Ordinance does not violate the Dormant Commerce Clause.  It allows out-of-state owners of second homes to participate in the short-term rental market in Hood River on equal terms as in-state owners of second homes.  It also imposes no burden on interstate commerce, and it advances Hood River's legitimate policy goals of maintaining the livability of its residential neighborhoods and expanding housing options for its growing population.  Accordingly, this Court should affirm the district court's dismissal of Appellants' action.

DATED this <u>9th</u> day of June, 2026.

<div style="margin-left:40%">

/s/Christopher Lundberg
Christopher Lundberg
Matthew E. Malmsheimer
HAGLUND KELLEY LLP

Attorneys for Appellee City of Hood River

</div>

29

## STATEMENT OF RELATED CASES

The City of Hood River is not aware of any related case as defined in Ninth Circuit Rule 28-2.6.

DATED this <u>9th</u> day of June, 2026.

<div style="text-align:right">

<u>/s/Christopher Lundberg</u>
Christopher Lundberg
Matthew E. Malmsheimer
HAGLUND KELLEY LLP

Attorneys for Appellee City of Hood River

</div>

30

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6,615 words, excluding the parts of the brief exempted by Fed R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word Version 1808, font size 14 and Times New Roman type style.

DATED this 9th day of June, 2026.

/s/Christopher Lundberg
Christopher Lundberg
Matthew E. Malmsheimer
HAGLUND KELLEY LLP

Attorneys for Appellee City of Hood River

31

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of June, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Participants in the case will be served by the appellate CM/ECF system.

/s/Christopher Lundberg
Christopher Lundberg
Matthew E. Malmsheimer
HAGLUND KELLEY LLP

Attorneys for Appellee City of Hood River